Theodore D. CHRISTENSEN & Susan B. Christensen, Appellants–Plaintiffs,

v.

SEARS, ROEBUCK AND CO., Appellee–Defendant.

SEARS, ROEBUCK AND CO., Third–Party Appellant–Third–Party Plaintiff,

v.

FLAIR INTERNATIONAL CORPORA-TION and Alday Comfort, Inc., Third–Party Appellees–Third–Party Defendants.

No. 41A01–8912–CV–532.

Court of Appeals of Indiana, First District.

Jan. 28, 1991.

Rehearing Denied March 18, 1991.

C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, Larry J. Gesse, Rogers & Gesse, Franklin, for appellants.

Douglas J. Hill, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for appellee-defendant Sears, Roebuck and Co.

Robert G. Weddle, Michael R. Hartman, Nana Quay–Smith, Bingham, Summers, Welsh & Spilman, Indianapolis, for third-party appellee Flair Intern. Corp.

Linda Y. Hammel, Yarling, Robinson, Hammel & Lamb, for third-party appellee Alday Comfort, Inc.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Theodore and Susan Christensen (Christensens) appeal from a judgment favoring Sears, Roebuck & Co. (Sears), Flair International Corporation (Flair), and Alday Comfort, Inc. (Alday) in a personal injury action for damages resulting from an improperly installed furnace vent damper.

We affirm in part, reverse in part, and remand.

## ISSUES

We restate the issues presented for review as:

1. Did the trial court err in permitting Sears and the two third-party defendants, Alday and Flair, a total of six peremptory challenges while limiting the Christensens to only three peremptory challenges?

2. Did the trial court commit reversible error by granting Alday's motion for judgment on the evidence?

3. Did the trial court err in instructing the jury that Sears could not be found liable for the acts of Alday?

4. Was the exclusion of evidence of another defective Flair damper reversible error?

## FACTS

In June 1979, the Christensens bought a furnace which included an electronic flue damper from Sears. The Christensens also purchased a Sears maintenance agreement on the equipment. The Christensens paid one lump sum to Sears for the equipment, maintenance agreement, and installation costs. The agreement provided that Sears would not install the equipment but would arrange for installation.

Sears contracted with Alday on August 23, 1979, whereby Alday agreed to install Sears' equipment for Sears' customers. Sears retained the right to inspect Alday's work before Sears would pay him. Sears also reserved the right of indemnification against Alday for any negligent installation of Sears' equipment.

Sears contacted Alday to install the furnace and vent damper for the Christensens. Alday installed the equipment on September 11, 1979. Michael Albaugh, the installer for Alday who performed the installation for the Christensens, testified to his normal installation procedure.

The Christensens experienced various health problems from 1980 to 1983 after the equipment. was installed. In March 1983, a gas company employee discovered the vent damper was miswired which did not permit it to open, thereby allowing carbon monoxide to leak into the home. The Christensens filed suit on June 8, 1984, against Sears, alleging the vent damper purchased from Sears was defective and resulted in carbon monoxide poisoning. The Christensens' complaint listed strict liability, vicarious liability, and negligence theories.[1] The Christensens later amended their complaint adding Alday as a defendant. However, the court granted Alday summary judgment because the statute of limitations had expired.

Sears ultimately filed third-party complaints for indemnity against Alday and Flair, the manufacturer of the vent damper. At trial, Sears, Flair, and Alday received a total of six peremptory challenges and the Christensens were limited to three. At the close of all of the evidence, the trial judge granted Alday's renewed motion for judgment on the evidence. The court instructed the jury they could not find Sears liable for any negligence by Alday. The jury returned a verdict in favor of Sears, relieving Flair and Alday from any responsibility for indemnity.

Further facts will be provided as necessary.

## DISCUSSION AND DECISION

*Issue One*

■ The Christensens complain the trial court improperly allowed the third-party defendants three additional peremptory challenges. The Christensens claim Ind. Trial Rule 47 limits the defendant and third-party defendants to a total of three peremptory challenges. The relevant portion of T.R. 47(C) states, "each side shall

have three (3) peremptory challenges." Christensens' objection and motion for limitation on peremptory challenges were overruled. The Christensens interpret "each side" in T.R. 47 to include all defendants and third-party defendants as one side.

While this particular question has not been addressed previously in Indiana, our supreme court considered a similar issue in *Snodgrass v. Hunt* (1860), 15 Ind. 274, 276. The statute in *Snodgrass* provided, "In all cases where the jury consists of six or more persons, each party shall have three peremptory challenges ... 2 R.S., § 313, p. 107."[2] *Id.* at 276. The supreme court interpreted "each party" to mean all persons named as plaintiffs on one side, and all persons joined as defendants on the other. *Id.* However, in *Snodgrass*, the parties consisted of the plaintiff and several co-defendants. The *Snodgrass* court did not consider the present situation of third-party defendants who are not also defendants in the underlying claim.

A majority of jurisdictions allow separate sets of peremptory challenges to parties on the same side but with antagonistic interests.[3] *R.E. Gaddie, Inc. v. Evans* (Ky. 1965), 394 S.W.2d 118, 120 (cross-claim defendants); *O'Brien v. Delta Gas, Inc.* (La. App.1983), 426 So.2d 262, 266, *writ denied*, 433 So.2d 163 (third-party defendant); *Hilyer v. Hole* (1982), 114 Mich.App. 38, 318 N.W.2d 598, 601–02; *Leaphart v. Whiting Corp.* (1989), 387 Pa.Super. 253, 564 A.2d 165, 169; *Lenkiewicz v. Lange* (1976), 242 Pa.Super. 87, 363 A.2d 1172, 1175–76 (defendants joined by original defendant); *Webster v. Lipsey* (Tex.App.1990), 787 S.W.2d 631, 638–39, *writ denied; see also* 47 Am.Jur.2d *Jury* § 260 (1969); Annotation, *Jury: Number of Peremptory Challenges Allowable in Civil Case Where There Are More Than Two Parties Involved*, 32 A.L.R.3d 747, 752 (1970). In

---

1. The issues appealed concern only the vicarious liability theory. In their brief, the Christensens do not contest the verdict on the negligence or strict liability claims against Sears.

2. The language in the predecessor statute is encompassed today by T.R. 47.

3. A minority of two states recognize only two sides to any case in determining the number of peremptory challenges. Arizona Rule 47(e) provides only two sides exist for the purposes of peremptory challenges. In Missouri, the governing statute specifically requires all plaintiffs to share three challenges and all defendants to share three challenges.

other words, if the trial court finds that a three-sided dispute exists because the interests of the third-party defendants are antagonistic with the original defendant, then the court may allow separate sets of peremptory challenges.

■ In these jurisdictions, the determinative factor of whether to give separate peremptory challenges to parties on the same side is the level of antagonism between them. *Id.* After voir dire and prior to the exercise of the peremptory challenges, the trial judge must decide whether antagonism exists. *Patterson Dental Co. v. Dunn* (Tex.1980), 592 S.W.2d 914, 919; *Webster*, 787 S.W.2d at 638; *Diamond Shamrock Corporation v. Wendt* (Tex. App.1986), 718 S.W.2d 766, 768. Factors that the trial court considers in determining antagonism are: whether the defendants allege fault of the other defendants, *Patterson Dental*, 592 S.W.2d at 918–19; whether the defendants have different defenses, *Hilyer*, 318 N.W.2d at 601; whether the defendants collaborate to select jurors to strike, *Diamond Shamrock*, 718 S.W.2d at 770; and whether only one defendant could be found liable or defendants could be liable equally, *O'Brien*, 426 So.2d at 266; *Hilyer*, 318 N.W.2d at 601–602. We align with the majority allowing separate sets of peremptory challenges to parties on the same side with antagonistic interests.

As the reviewing court, we will reverse the decision if the trial court abused its discretion. *See Leaphart*, 564 A.2d at 170; *Webster*, 787 S.W.2d at 639. We consider the information which existed when the trial judge made his determination on antagonism. *See Webster*, 787 S.W.2d at 638–39. The court's decision on allocation of peremptory challenges occurs before trial commences. *Id.* Therefore, we do not review the trial record or consider events at trial. We review the pleadings, pre-trial discovery, and representations made during voir dire to determine whether the court abused its discretion. *Id.; Diamond*, 718 S.W.2d at 768.

Although the trial court did not make a specific evaluation regarding antagonism after voir dire, the evidence supports the trial court's allocation of separate challenges to the defendants. At the time of voir dire, Sears had filed a third-party complaint against Flair alleging that Flair caused any harm suffered by the Christensens. In its answer, Flair denied Sears' allegations and presented lack of privity as an affirmative defense. Sears also filed a third-party complaint against Alday, alleging Alday was responsible for any negligence in installation of the vent damper. Alday responded by seeking a bifurcated trial and denying Sears' allegations. Alday also filed a motion for summary judgment and motion to dismiss. Sears opposed the motions. During voir dire, each defendant questioned prospective jurors and actively pursued their own interests to protect their defenses. Before trial commenced, Alday and Flair were adverse to Sears also because Christensens alleged Sears was negligent independently from both third-party defendants. Consequently, Flair and Alday were adverse to Sears prior to trial because they could escape indemnity liability if the jury were to find Sears negligent independently. The record supports that the interests of the defendant and third-party defendants were adverse prior to trial.

■ Furthermore, we find the failure of the trial court to evaluate antagonism between the defendant and third-party defendants before allocating challenges is not reversible error where no harm results. *Houck v. Urov* (Fla.Dist.Ct.App.1966), 183 So.2d 610, 611; *see also* Annotation, *Effect of Allowing Excessive Number of Peremptory Challenges*, 95 A.L.R.2d 957, 963 (1964). Indiana adheres to the rule requiring a showing of prejudice before reversal may be granted. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652, 659. The complaining party has the burden of showing actual prejudice. *Id.; see Leaphart*, 564 A.2d at 170.

The Christensens complain that Juror Kolthoff would not have been reached as a juror if separate challenges had not been given to the third-party defendants. Juror Kolthoff's voir dire testimony was not re-

corded. The only reference in the record to her testimony is that she had an uncle employed by Sears. The record also reflects that the Christensens accepted Kolthoff as a juror and that the Christensens had no remaining peremptory challenges when Kolthoff was reached. The Christensens admit Kolthoff could not be dismissed for cause and do not contend Kolthoff was biased or hostile. They merely claim the jury selection process was tainted and unfair because the defendants received twice as many challenges as the plaintiffs. This argument does not demonstrate prejudice. The Christensens have failed to establish actual prejudice; therefore, we find no reversible error.

*Issue Two*

The Christensens contend they presented sufficient evidence to support that Sears is liable for Alday's negligence; therefore, the court erred in granting Alday's motion for judgment on the evidence. Upon a motion for judgment on the evidence, the trial court views the evidence and reasonable inferences in a light most favorable to the nonmoving party. The motion should be granted only when there is a total lack of evidence on an essential element of the case or where a defense to the action is proved by the evidence. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, 206–07.

As the reviewing court, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Id.* We follow a two-step analysis to determine whether sufficient evidence supports the plaintiff's allegations. First, we determine whether reasonable quantitative evidence supports the plaintiff's allegations. If none exists, the motion should be granted. If some evidence exists, we then consider whether a reasonable inference that the plaintiff's allegations are true can logically be drawn from that evidence. *Lazarus Department Store v. Sutherlin* (1989), Ind.App., 544 N.E.2d 513, 518, *trans. denied.*

The Christensens claim the evidence shows that Sears assumed nondelegable duties which were breached and caused them harm.[4] They allege Sears assumed duties of installation and inspection which could not be delegated to Alday, an independent contractor, to avoid liability.[5]

Generally, the employer of an independent contractor cannot be held liable for the negligent acts of the independent contractor. *Johns v. New York Blower Co.* (1982), Ind.App., 442 N.E.2d 382, 384. However, Indiana recognizes five exceptions to the rule of nonliability. *Id.* at 385. The Christensens rely on the exception by which the employer may be liable for the independent contractor's acts where the employer is charged with a specific duty by law or contract. *See Id.* A duty of care may arise where one party voluntarily assumes such a duty. *Phillips v. United Engineers & Constructors, Inc.* (1986), Ind.App., 500 N.E.2d 1265, 1269.

The Christensens allege that Sears assumed the duties of installation and inspection by contract.[6] The words of a con-

---

**4.** Sears refers to evidence in its brief claiming the Christensens' problems were unrelated to carbon monoxide poisoning. Specifically, they state that Ted heavily drank, smoked cigarettes, and was experiencing stress from being fired from his job. Similarly, they declare that Susan suffered from severe anemia and was a heavy smoker. Sears asserts that these factors caused the Christensens' health problems. Nevertheless, we do not consider these allegations in our review, because we may review only the facts most favorable to the Christensens as the nonmoving party of Alday's motion for judgment on the evidence. *See Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, 206.

**5.** The Christensens raise a third-party beneficiary claim. Appellant's Brief at 30. However, this issue cannot be considered for the first time upon appeal. *See Associates Investment Co. v. Claeys* (1989), Ind.App., 533 N.E.2d 1248, 1254, *trans. denied.*

**6.** The Christensens also allege that Sears is responsible for Alday's negligence under Restatement (Second) of Torts § 429. Rest. § 429 provides:

"One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

tract are given their usual and common meaning. If reasonable people would find the contract subject to more than one interpretation, the contract is ambiguous. *100 Center Development Co. v. Hacienda Mexican Restaurant* (1989), Ind.App., 546 N.E.2d 1256, 1258–59, *trans. denied.* The language of the contract provides:

> "Sears offers to furnish the materials listed above and arrange for their delivery and installation ... for the total cash price shown above."

Record at 2141. On the reverse side of the contract, further provisions state:

> "*Installation and Warranty Information.* I understand Sears will not install the materials but will arrange for the installation. Sears is responsible only for materials and installation furnished and arranged by Sears ...
>
> *Authorization.* I authorize Sears 1) to arrange for a contractor to make the installation of materials, 2) to issue a work order for this installation to a contractor, 3) to inspect the installation and 4) to pay the contractor when the installation is complete if I have signed a certificate that the installation has been completed to my satisfaction."

Record at 2142. The Christensens interpret the contract as making Sears liable for the materials furnished and installation arranged by Sears. Sears contends it is responsible for installation which is arranged *and* furnished by it.

Our reading of the language in question suggests it is susceptible of only one reasonable interpretation. We interpret the contract language as placing Sears responsible for installation and inspection, even though Alday installed the equipment as an independent contractor. If Sears intended to disclaim responsibility for installation by an independent installer, Sears could have used precise language. Sears' interpretation does not conform to the usual interpretation reasonable people would give the language.

The Christensens argue Rest. § 429 is akin to the doctrine of apparent authority. However, Indiana has never adopted Rest. § 429, and we

We find the evidence supports the Christensens' claim that Sears accepted the nondelegable duty of installation. Judgment on the evidence was improper because a reasonable inference can be drawn from the evidence that the Christensens' allegations are true. *See Sutherlin,* 544 N.E.2d at 518. Because Sears had the nondelegable duty of installation, a jury could find Sears liable for negligent installation by Alday if Alday was determined to be negligent. Therefore, the trial court erred in granting Alday judgment on the evidence.

*Issue Three*

■ The Christensens objected to the following portion of the court's final instructions:

> "[T]he court has removed from your consideration the issue of negligence by [Alday]. Therefore, you may not find against Sears on the basis of any negligent act of Alday. This does not effect [sic] the other theories of negligence raised by the plaintiffs against Sears."

Record at 3255–56. The Christensens maintain the court erred in instructing the jury because the instruction was not supported by the evidence. *See Spirito v. Temple Corp.* (1984), Ind.App., 466 N.E.2d 491, 493, *trans. denied.* The Christensens contend that their argument in Issue Two, if upheld, precludes the above instruction. We agree. The evidence provides a basis for a finding that Sears was liable for injuries proximately resulting from the breach of Sears nondelegable duties by the installer, Alday. An instruction which is not supported by the evidence is grounds for reversal if prejudice resulted from the improper instruction. *Spirito,* 466 N.E.2d at 493. Because the instruction prohibited the jury from considering Alday's negligence, it was prejudicial and is reversible error. *See Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 122, *trans. denied.*

*Issue Four*

■ The Christensens' final argument addresses the trial court's exclusion of an-

decline to do so in this case where the contract specified that a contractor would install the equipment.

other defective Flair damper (Exhibit Y) which Sears sold. The Christensens contend that Exhibit Y was relevant to Flair's credibility and dependability in testing their equipment. They claim Exhibit Y was evidence of a defective condition of Flair dampers; and therefore, was admissible.

We find the trial court properly sustained Sears' objection to admission of Exhibit Y and excluded it. Record at 1542. The Christensens did not meet their burden of showing that Exhibit Y was relevant, not prejudicial, and was so important to their case as to substantially affect their rights. *See Manns v. State Department of Highways* (1989), Ind., 541 N.E.2d 929, 936. Exhibit Y was not sufficiently similar to the Christensens damper to be relevant. During the offer to prove, testimony established that Exhibit Y malfunctioned by remaining open, whereas the Christensen damper remained closed. Flair points out that Exhibit Y was a different model attached to a different furnace. The trial court noted that Exhibit Y was visually different and involved no contention of miswiring. Record at 1540–41 and 1570. These differences sufficiently support the trial court's exclusion of Exhibit Y.

As to Issues 1 and 4, we affirm the trial court's rulings. We reverse on Issues 2 and 3. Therefore, we remand with instructions for the trial court to vacate its grant of judgment on the evidence for Alday. Further, we remand for retrial only to determine whether Alday was negligent for which Sears could be vicariously liable and if so, whether Sears has a right to indemnity from Alday.

SHIELDS, P.J., and ROBERTSON, J., concur.