**Lawrence HECK and Peabody Coal Company, Appellants,**

v.

**James L. ROBEY and Carol S. Robey, Appellees.**

**No. 63S01–9503–CV–294.**

Supreme Court of Indiana.

Dec. 22, 1995.

**500**

Keith M. Wallace, Wright, Evans & Daly, Evansville, for Appellant Lawrence Heck.

William P. Wooden, Kevin C. Tyra, Wooden McLaughlin & Sterner, Indianapolis, for Appellant Peabody Coal Co.

Barbara S. Barrett, Barrett Law Office, P.C., Evansville, for Appellees.

ON PETITION TO TRANSFER

SELBY, Justice.

The question in this interlocutory appeal is whether Robey, a paramedic, may recover against Heck and Peabody Coal for injuries incurred during Robey's rescue of Heck. Heck and Peabody Coal moved for summary judgment, arguing among other things that the fireman's rule bars Robey from recovering. The trial court denied the motions for summary judgment, holding that genuine issues of material fact exist and that the fireman's rule does not extend to paramedics. The Court of Appeals accepted jurisdiction over this interlocutory appeal and reversed the trial court, holding that the fireman's rule applies and that Robey's claim was barred. We disagree and conclude that the fireman's rule does not, as a matter of law, bar Robey's recovery. Under the rescue doctrine Heck and Peabody Coal owed no duty to Robey except to abstain from positive wrongful acts. The trial court properly found that a genuine issue of material fact exists as to whether Heck engaged in positive wrongful acts, and thus did not err in rejecting Heck and Peabody Coal's argument that the fireman's rule bars Robey from recovering.

## I. FACTS

James L. Robey (Robey) was a licensed paramedic and emergency medical technician employed by Warrick Emergency Medical Service. On January 16, 1990, Robey and his partner, Tracy Kavanaugh (Kavanaugh), responded to a "911" call to extricate Heck from a ditched vehicle at the Squaw Creek Mine and to provide emergency medical services. The Squaw Creek Mine is a joint venture owned in part by Peabody Coal. Lawrence Heck (Heck), a Squaw Creek Mine employee weighing nearly 200 pounds, had driven a company vehicle into a large, steep ditch while on the job. According to Robey, "[t]he truck fit upside down in the ditch. Not a whole lot of it was above the ditch." Robey alleges that Heck was intoxicated at the time of the accident, which Heck and Peabody Coal do not dispute for purposes of their motions and this appeal.

Robey was in charge of the rescue operation. When Robey and Kavanaugh could not get into Heck's vehicle, they summoned firefighters who removed the vehicle door with hydraulic tools to aid in Heck's rescue. Robey and Kavanaugh then removed Heck, placed him on a spine board, and carried him out of the ditch, up to the road. Heck allegedly flailed and kicked in a combative manner during the rescue, requiring Kavanaugh to hold Heck's arms and forcing Robey to do most of the pulling necessary to extricate Heck. Because of the position of the truck, both Robey and Kavanaugh were on their knees while trying to lift Heck. Heck was so combative that Robey called for a back-up ambulance and requested Valium from the hospital to calm Heck. Robey sustained back injuries for which he now brings this negligence action. Carol S. Robey, Robey's spouse, brings her negligence action for loss of Robey's services, society and consortium.

## II. STANDARD OF REVIEW

■ Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. "[T]he contents of all pleadings, affidavits and testimony are liberally construed in the

light most favorable to the non-moving party." *Ayres v. Indian Heights Vol. Fire Dep't* (1986), Ind., 493 N.E.2d 1229, 1234.

## III. DISCUSSION

### A. Overview

▮ The fireman's rule provides that firemen responding in emergencies are owed only the duty of abstaining from positive wrongful acts. The Court of Appeals characterizes the fireman's rule as an exception to the rescue doctrine, which is discussed below. *See generally Fox v. Hawkins* (1992), Ind. App., 594 N.E.2d 493, 495–96. We first recognized the fireman's rule in 1893. *Woodruff v. Bowen* (1893), Ind., 136 Ind. 431, 34 N.E. 1113. In *Woodruff,* we held that a landowner owed no duty to a firefighter responding to a fire on the landowner's property except to abstain from positive wrongful acts. *Woodruff,* 136 Ind. at 442, 34 N.E. 1113. We established this narrow, limited duty to firefighters because of the impracticability and expense of keeping one's property in the safest of conditions at all times on the off-chance that a firefighter might be required to enter the property in an emergency. Thus, as in other jurisdictions, Indiana's fireman's rule was based originally upon premises liability and concerned only the legal question of duty. Since adopting *Woodruff,* we have not addressed the propriety of its application in cases not involving premises liability.

We now take the opportunity to examine how the fireman's rule has developed since we last addressed the rule over 100 years ago. Since that time, the Court of Appeals has expanded the fireman's rule, holding that the rule acts as a complete bar to recovery by public safety officers except in limited situations. In this case, the Court of Appeals did not address the applicability of the rescue doctrine, holding instead that the fireman's

rule extends to paramedics and bars their recovery. This case presents the question of the duty owed to a professional rescuer, such as a paramedic, under the rescue doctrine, rather than the question of a property owner's duty to a professional rescuer injured by a defect in the property. We discuss the rescue doctrine and the fireman's rule in turn.

### B. The Rescue Doctrine

Robey alleges that Heck and Peabody Coal owed him a duty based upon the rescue doctrine.[1] This Court first recognized the rescue doctrine in *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280, holding that " '[o]ne who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury.' "[2] *Id.* at 167, 111 N.E.2d 280 (quoting 65 C.J.S. *Negligence* § 63); *see also Lambert v. Parrish* (1986), Ind., 492 N.E.2d 289, 291. As Justice Cardozo eloquently explains

> Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and the probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer.

*Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437 (1921).

▮ Heck counters that he cannot be liable because *Neal* suggests that the rescue doctrine applies only when there are three parties: a tortfeasor, a party injured as a result of the tortfeasor's negligence, and a rescuer of the party injured. We agree with the Supreme Court of Missouri that

---

1. Though not at issue in this appeal, we observe that the rescue doctrine also serves as qualification upon proximate cause. *See Krause v. U.S. Truck Co.,* 787 S.W.2d 708, 710–11 (Mo.1990); *Govich v. North Am. Sys., Inc.,* 112 N.M. 226, 814 P.2d 94, 100 (1991).

2. The rescue doctrine is particularly significant historically, because at the time the doctrine gained acceptance, contributory negligence was

an absolute bar to recovery. The rescue doctrine protected the rescuer's cause of action by precluding the rescuer from being found contributorily negligent for "voluntarily plac[ing] himself in a perilous position to prevent another person from suffering serious injury or death...." Jeffrey. F. Ghent, Annotation, *Rescue Doctrine: Applicability and Application of Comparative Negligence Principles,* 75 A.L.R. 4th 875, 876 (1990).

[t]here is no logical basis for distinguishing between the situation in which recovery is sought against a defendant whose negligence imperiled some third party, and the situation in which recovery is sought against a defendant who negligently imperiled himself. A person with reasonable foresight who negligently imperils another or who negligently imperils himself will normally contemplate the probability of an attempted rescue, in the course of which the rescuer may sustain injury. Under the rescue doctrine, "the right of action depends ... upon the wrongfulness of the defendant's conduct in its tendency ... to cause the rescuer to take the risk involved in the attempted rescue. And ... a person who carelessly exposes himself to danger or who attempts to take his life in a place where others may be expected to be, does commit a wrongful act towards them in that it exposes them to a recognizable risk of injury."

*Lowrey v. Horvath,* 689 S.W.2d 625, 628 (Mo. 1985) (quoting F. Bohlen, *Studies in the Law of Torts,* 569 n. 33 (1926)) (alterations in original); *see also Usry v. Small,* 103 Ga. App. 144, 118 S.E.2d 719, 720 (1961); *Brugh v. Bigelow,* 310 Mich. 74, 16 N.W.2d 668, 671 (1944); *Provenzo v. Sam,* 23 N.Y.2d 256, 296 N.Y.S.2d 322, 325, 244 N.E.2d 26, 28 (1968). Thus, a person who injures himself while acting in a careless or reckless manner may owe a duty to his or her own rescuer; the duty stems from an implied invitation to rescue.

■ We further agree with the Supreme Court of Missouri that

the 'rescue doctrine' under any conception of it contemplates a voluntary act by a rescuer who in an emergency attempts a 'rescue' prompted by a spontaneous, humane motive to save human life, and which 'rescue' the rescuer had no duty to attempt in the sense of a legal obligation or in the

sense of a duty fastened on him by virtue of his employment.

*Nastasio v. Cinnamon,* 295 S.W.2d 117, 120 (Mo.1956); *see also Ryder Truck Rental, Inc. v. Korte,* 357 So.2d 228, 230 (Fla.App.1978); *Buchanan v. Prickett & Son, Inc.,* 203 Neb. 684, 279 N.W.2d 855, 858 (1979). The rescue doctrine is designed to encourage and reward humanitarian acts.

■ It is undisputed that Robey responded to the accident in his capacity as a paramedic pursuant to a "911" call. Robey concedes that his actions were not voluntary, since he was "acting under a duty imposed on him as an employee...." (R. at 67–68). Both lack-of-voluntariness and the existence of this duty of employment would ordinarily suffice to defeat Robey's argument that Heck and Peabody Coal owed him a duty under the rescue doctrine. While we commend professional rescuers for their contributions to society, a professional rescue attempt stemming from a "911" call simply lacks the spontaneous and impulsive character that the rescue doctrine was designed to protect.[3]

Moreover, we have held that "[o]nly those who have a close proximity in time and distance to the party requiring assistance are within the class of potential rescuers." *Lambert,* 492 N.E.2d at 291. In one oft-cited case, Justice Cardozo suggested in dictum that continuity may be significant:

We may assume, though we are not required to decide that peril and rescue must be in substance one transaction; that the sight of one must have aroused the impulse to the other; in short, that there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences.

*Wagner v. International Ry. Co.,* 232 N.Y. 176, 133 N.E. 437 (1921). As in *Lambert,* 492 N.E.2d at 291, we need not decide whether the injured rescuer must have had actual sensory perception of the injury or accident before a duty will arise under the rescue

---

**3.** Notably, we are deciding the scope of duty under the rescue doctrine as a matter of law based upon the relationship of the parties, the foreseeability of harm, and public policy, *see Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, not based on assumption of risk. As discussed below, the fireman's rule can no longer be based

upon an assumption-of-risk rationale. *See generally* 1 Arthur Best, *Comparative Negligence Law and Practice* § 4.20[3] (1995); *see also Christensen v. Murphy,* 296 Or. 610, 678 P.2d 1210 (1984). *But see Fox v. Hawkins* (1992), Ind.App., 594 N.E.2d 493.

doctrine. In this case, the facts simply do not present a sufficiently continuous transaction for a duty to exist under the rescue doctrine. Robey was not at or near the site at the time of the accident, and his response came only after an emergency alert.

■ Thus, the rescue doctrine will not ordinarily create, for professional rescuers responding to emergency calls within the course of their employment, the same level of duty owed to lay rescuers present at or near the scene of an accident. It is true that Robey's arrival and actions at the scene of the rescue were not the result of a continuous transaction of spontaneous, impulsive, and gratuitous reaction to Heck's peril. However, Robey presented evidence creating a genuine issue of material fact as to whether Heck engaged in flailing and kicking in a combative manner during the rescue attempt, thus making extrication more dangerous.[4] Thus, Heck's duty to Robey does not arise under the rescue doctrine, but rather from the relationship between Heck and Robey following the commencement of the rescue attempt, and imposes responsibility upon Heck for his conduct during the rescue.

### C. The Fireman's Rule

■ We must now determine whether the fireman's rule constitutes an absolute bar to Robey's recovery, as held by the Court of Appeals. We conclude that it does not.

In *Woodruff v. Bowen* (1893), Ind., 136 Ind. 431, 34 N.E. 1113, we held that a landowner owed no duty to a firefighter responding to a fire on the landowner's property except to abstain from positive wrongful acts. *Id.* at 442, 34 N.E. 1113. This Court stated that

the owner of a building in a populous city does not owe it as a duty at common law, independent of any statute or ordinance, to keep such building safe for firemen or other officers, who, in a contingency, may enter the same under a license conferred by law. It seems to be settled, however, that such duty may be imposed either by statute or by an ordinance adopted for that purpose.

*Id.* at 442–43, 34 N.E. 1113. Thus, the fireman's rule in this Court's jurisprudence was simply a shorthand way of characterizing the duty owed by a landowner to those coming onto the premises under a public duty during emergencies. Since that time, our Court of Appeals expanded the rule, adopting the following test:[5] "The rule basically provides that professionals, whose occupations by nature expose them to particular risks, may not hold another negligent for creating the situation to which they respond in their professional capacity." *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215. Courts have used several different rationales to support the fireman's rule. In this case, the Court of Appeals held that the fireman's rule "rests on three distinct but related theoretical pedestals: the law of premises liability, the *defense* of incurred risk, and the concerns of public policy," thus expanding the rationale behind the rule to include the additional justifications of assumption of risk and public policy. *Heck*, 630 N.E.2d at 1363 (emphasis added).

■ First, we note that premises liability is not at issue in this case. Second, we observe that when determining whether a common-law duty exists, we consider public policy. In the previous section, we held that, consonant with public policy, the rescue doctrine does not extend to an imperiled per-

---

4. Robey argues that Heck engaged in willful and wanton conduct by operating a vehicle while intoxicated in violation of Ind.Code § 9–30–5–1. Even assuming arguendo that Heck violated the statutory prohibition against driving while intoxicated, we agree with the Court of Appeals that Ind.Code § 9–30–5–1 is intended to benefit the general public on the State's highways, not paramedics attempting to rescue intoxicated drivers. Therefore any violation of this statute alone would not constitute per se willful or wanton behavior.

5. The Court of Appeals departed from the rule as stated in *Woodruff* when it barred firefighters injured *off-premises* from recovering based upon the rule. *Koehn v. Devereaux* (1986), Ind.App., 495 N.E.2d 211, 215. The Court of Appeals also expanded the doctrine to include police officers, *Koop v. Bailey* (1986), Ind.App., 502 N.E.2d 116, 117–18. The Court of Appeals recently declined to extend the fireman's rule to building inspectors. *Sam v. Wesley* (1995), Ind.App., 647 N.E.2d 382, 384–85.

son's conduct after rescuers have arrived and are attempting rescue. We decline to take the inconsistent position that public policy favors holding that the defendants have complete immunity based solely upon the plaintiff's occupation. Moreover, the public policy concern of encouraging the public to seek assistance when it is needed is not impinged by this view.

The third rationale relied upon by the Court of Appeals in holding that Robey is barred as a matter of law from asserting this negligence claim is incurred risk.[6] In 1942, the United States Supreme Court outlined the history of the assumption-of-risk defense:

> Perhaps the nature of the present problem can best be seen against the background of one hundred years of master-servant tort doctrine. Assumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of this period to insulate the employer as much as possible from bearing the "human overhead" which is an inevitable part of the cost—to someone—of the doing of industrialized business. The general purpose behind this development in the common law seems to have been to give maximum freedom to expanding industry. The assumption of risk doctrine for example was attributed by this Court to "a rule of public policy, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business," but would also encourage carelessness on the part of the employee.

*Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 58–59, 63 S.Ct. 444, 446–47, 87 L.Ed. 610 (1942) (footnotes omitted). Out of these origins, assumption of risk expanded beyond master-servant relationships into other areas of tort law until it became a firmly established part of our jurisprudence.

Tort law changed significantly over the years, however, and in 1983 Indiana became the fortieth state to adopt either a comparative fault or comparative negligence scheme. Edgar W. Bayliff, *Drafting and Legislative History of the Comparative Fault Act*, 17 Ind.L.Rev. 863, 864 (1984). As a comparative *fault* statute, the Indiana Comparative Fault Act (Act) eliminated contributory negligence as a complete defense, as well as other common-law defenses. The Act created a modified comparative fault scheme in which the plaintiff can recover only if his or her fault is less than or equal to "the fault of all persons whose fault proximately contributed to the complainant's damages." [7]

▮▮▮▮ Importantly, the Act provides in part:

> "Fault" includes any act or omission that is negligent, willful, wanton, or reckless toward the person or property of the actor or others, but does not include an intentional act. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, *incurred risk*, and unreasonable failure to avoid an injury or to mitigate damages.

Ind.Code § 34–4–33–2 (emphasis added). Consequently, the complete defense of "incurred risk" no longer exists; it is subsumed by the concept of fault in our comparative fault scheme.[8] As a component of fault, it is

---

**6.** In other jurisdictions, "incurred risk" is referred to as "assumption of risk" and this opinion reflects this practice when discussing caselaw from other jurisdictions. In Indiana, there exist separate doctrines referred to as "assumption of risk" in contract cases, and "incurred risk" in non-contract cases. *See Whitebirch v. Stiller* (1991), Ind.App., 580 N.E.2d 262, 265 n. 2. In Indiana assumption of risk, or an enforceable express consent to hold another harmless and/or relieve them of duty, remains a complete bar to recovery.

**7.** In comparison, a minority of states adopted "pure" comparative fault schemes, 1 Arthur Best, *Comparative Negligence* § 2.10 (1995), in

which "a plaintiff is barred from recovering damages for loss or injury caused by the negligence of another only when the plaintiff's negligence is the sole legal cause of the damage, or the negligence of the plaintiff and some person or persons other than the defendant or defendants was the sole legal cause of the damage." *Hoffman v. Jones*, 280 So.2d 431, 438 (Fla.1973).

**8.** We observe that the Act became effective January 1, 1985, and does not apply to actions accruing prior to that date. Ind.Code § 34–4–33–1(a)(2). In *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484, 486, we held that incurred risk constitutes a complete bar to recovery. In that case, however, the action accrued prior to

subject to the Act's apportionment scheme that reduces or eliminates the plaintiff's recovery depending on the degree of the plaintiff's fault.[9]  *See State v. Snyder* (1992), Ind., 594 N.E.2d 783, 786;  *Bob Schwartz Ford, Inc. v. Dunham* (1994), Ind.App., 631 N.E.2d 953, 957.  Any rule that purports to effect an absolute defense based upon incurred risk is contrary to our comparative fault scheme.[10]

■  The Court of Appeals held that Robey *impliedly* assumed the risk of injury in the primary sense, based upon his choice of occupation.  According to the Court of Appeals, when the plaintiff incurs risk in the primary sense, the plaintiff relieves the defendant of any duty towards the plaintiff, and no negligence action may lie.  *Heck,* 630 N.E.2d at 1366.  The Court of Appeals held that

> [a] paramedic knows the work involves certain risks and has, thereby, implicitly agreed to relieve negligent persons of responsibility when the risks lead to foreseeable harm.  In essence, Robey "consented" to the harm risked or "waived" an application of the rescue doctrine.

*Heck,* 630 N.E.2d at 1366.  In other jurisdictions primary assumption of risk may be either express or implied.  *See, e.g., Springrose v. Willmore,* 192 N.W.2d 826, 827 (Minn. 1971).  We reject this primary assumption-of-risk terminology to the extent that it suggests that a lack of duty may stem from a plaintiff's incurred risk.  Under the Act, a plaintiff may relieve a defendant of what would otherwise be his or her duty to the plaintiff only by an express consent.[11]  Ind. Code § 34–4–33–2(a).

■  Neither Heck nor Peabody Coal allege that Robey expressly consented to bear the risks of the rescue operation by holding Heck and Peabody Coal harmless for any injury.  We therefore conclude that Heck and Peabody Coal have not demonstrated that Robey is barred as a matter of law from bringing this action.  A defendant will prevail at summary judgment if the plaintiff expressly assumed the risks of the activity and agreed to hold the defendant harmless (and that agreement is not unconscionable or contrary to public policy) or if the defendant otherwise had no duty to the plaintiff.  The court, however, may not hold that the defendant had no duty to the plaintiff based upon incurred risk, as compared to express enforceable consent.  As a result, we reject the Court of Appeals' conclusion that because Robey "implicitly agreed" to the risks of working as a professional rescuer, he was barred as a matter of law from recovering under the fireman's rule.  While the factfinder may determine that Robey incurred risk, the fact-finder must consider any incurred risk as fault for apportionment purposes under the Act.

The question of whether there is continued viability for the fireman's rule limiting the duty of care owed by the owner of urban premises, as stated in *Woodruff,* is not directly presented in this case, and we decline to address it at this time.

## IV.  CONCLUSION

For the foregoing reasons we affirm the trial court's denial of summary judgment and

---

1985.  Likewise, two cases that also uphold the continuing vitality of incurred risk as a complete defense are distinguishable.  The defendants in *Clark v. Wiegand* (1993), Ind., 617 N.E.2d 916, and *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 554–56, were governmental entities, and were thereby exempt from the Act.  Ind.Code § 34–4–33–8.

9.  As discussed earlier, the Act provides that a plaintiff may recover proportional to the defendant's fault so long as the plaintiff's fault does not exceed fifty percent (50%).  Ind.Code § 34–4–33–4.

10.  Of course, as a part of fault, incurred risk may effectively reduce or eliminate a plaintiff's recov-

ery, depending upon the percentage of fault attributed to the plaintiff by the factfinder.

11.  The court may determine on other grounds that no duty exists based upon "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy."  *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995.  In fact, one authority suggests that assumption-of-risk terminology has been used confusingly and undesirably to express "more widely understood concepts, such as scope of duty or contributory negligence."  4 Fowler V. Harper et al., *The Law of Torts* § 21.8 (1986).

remand for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.