**STAR TRANSPORT, INC., and Jeffrey Cottingham, Appellants–Defendants,**

v.

**Hervey BYARD, Appellee–Plaintiff.**

No. 69A04–0711–CV–619.

Court of Appeals of Indiana.

Aug. 12, 2008.

Lynn D. Lidke, Michael B. Langford, Thomas E. Schulte, Scopelitis Garvin Light Hanson & Feary, P.C., Indianapolis, IN, Attorneys for Appellant.

Donald W. Ward, Ward & Ward, Stanley L. White, White & White, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary[1]

Star Transport, Inc., ("Star") and its employee, Jeffrey Cottingham, appeal a judgment finding them jointly 75% at fault for injuries sustained by Hervey Byard when a car driven by Robert Peters struck Byard. We affirm.

### Issues

The issues before us are:

I. whether the trial court properly instructed the jury on the "rescue doctrine";

II. whether the trial court properly refused to instruct the jury on the doctrine of incurred risk; and

III. whether the trial court properly refused to permit Star and Cottingham to have peremptory juror challenges separate from Peters.

### Facts

On the evening of December 5, 2003, after dark, Cottingham was driving a tractor-trailer for Star. In Osgood, he attempted to make a right-hand turn from State Road 421 southbound onto Wilson Street; this turn is very sharp, slightly less than ninety degrees. While making the turn, Cottingham struck and became stuck on a concrete post at the corner of Wilson Street and 421. Cottingham attempted to extricate himself from the post by repeatedly backing up and moving forward. When backing up, the tractor-trailer blocked the southbound lane of 421. Cottingham did not put out any flares or reflective triangles while attempting to extricate the vehicle from the post, but the tractor-trailer was white with reflective tape and was visible to motorists. On appeal, Star agrees that it was unsafe for Cottingham to be repeatedly backing his tractor-trailer into the southbound lane of 421 without taking additional precautions.[2]

---

1. We heard oral argument in this case on July 16, 2008. We highly commend counsel for the quality of their presentations.

2. At trial, Cottingham denied backing his trailer onto 421, but several other witnesses contradicted this testimony. The evidence most favorable to the judgment is that Cottingham did back his trailer onto 421 without taking any precautions before doing so, other than perhaps turning on his flashers.

Seeing Cottingham's difficulty in removing his tractor-trailer from the post and that he was partially blocking southbound 421, several nearby residents decided to direct traffic around the truck. Travis Linville, Courtney Linville, and Jason Hooten stood on the centerline of 421 at the front of the tractor-trailer and were directing northbound traffic to slow down as it approached. Byard, meanwhile, went to the back of the tractor-trailer with the intention of directing southbound traffic to stop before attempting to pass it in the northbound lane. While Byard was directing southbound traffic, Peters, who was driving northbound, struck and injured him. It is unclear from the evidence whether Byard was standing in the northbound lane, the southbound lane, or on the centerline when Peters struck him. Blood tests revealed that Byard likely had a blood alcohol content of between .156 and .171 at the time of the incident, but no witnesses on the scene testified that Byard appeared intoxicated.

Byard sued Star, Cottingham, and Peters. At the beginning of trial, counsel for Star and Cottingham objected to being required to share their four peremptory juror challenges—three for regular jurors plus one for an alternate—with Peters. Counsel for Peters did not join this objection. The trial court overruled the objection. Counsel for Star and Cottingham exercised all four peremptory challenges.

At the conclusion of evidence, the trial court gave the jury instructions on negligence, comparative fault, proximate cause, intervening cause, and foreseeability. It also instructed the jury regarding a pedestrian's duty to maintain a proper lookout and to yield to vehicles when not in a crosswalk, and that an intoxicated person is held to the same standard of care as a sober person. The trial court also gave the following "rescue doctrine" instruction

over Star and Cottingham's objection: "One who has through his negligence endangered the safety of others may be liable for the injuries sustained by a third person who is attempting to save the others from injury." Tr. pp. 920–21. The court refused to give Star and Cottingham's pattern jury instruction on incurred risk, which read in part, "The Plaintiff incurs the risk of injury if he actually knew of a specific danger, understood the risk involved, and voluntarily exposed himself to that danger." App. p. 43.

The jury found Star and Cottingham jointly seventy-five percent at fault for Byard's injuries, Peters five percent at fault, and Byard himself twenty percent at fault. The total damages imposed against Star and Cottingham were $356,250.00. Star and Cottingham now appeal.

**Analysis**

### I. "Rescue Doctrine" Instruction

■■■ Star and Cottingham first contend the trial court erred in giving a "rescue doctrine" instruction to the jury. When reviewing a trial court's decision to give or refuse a tendered instruction, we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Willis v. Westerfield,* 839 N.E.2d 1179, 1189 (Ind.2006). The trial court has discretion in instructing the jury, and will be reversed on the last two issues only when the instructions amount to an abuse of discretion. *Id.* Whether an instruction correctly states the law, however, is a question of law that is reviewed de novo. *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893–94 (Ind.2002). "The selection of instructions is left to the sound discretion of the trial court so long as the instructions as a whole accurately and completely set forth the elements of the

parties' claims and defenses." *Willis*, 839 N.E.2d at 1189.

■ The main thrust of Star and Cottingham's argument is that the evidence did not support an instruction on the rescue doctrine. Specifically, they contend that the doctrine should not apply to persons who direct traffic after an accident, as opposed to those who actually attempt to rescue an identifiable person whose life or physical safety is immediately imperiled. The Indiana Supreme Court first officially recognized the rescue doctrine in 1953, when it said, " 'One who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury.' " *Neal v. Home Builders, Inc.*, 232 Ind. 160, 167, 111 N.E.2d 280, 284 (1953) (citation omitted). The plaintiff in *Neal* had rushed into an unfinished house after hearing the cries of her child who was trapped in the house; judgment in favor of the defendants was affirmed, however, because they had not been negligent in creating the danger that had trapped the child.

The Indiana Supreme Court has addressed the rescue doctrine in detail just twice since 1953. In 1986, the court suggested that the doctrine was a means of establishing duty because it framed the issue as whether the plaintiff "was in fact a rescuer to whom a duty of care was owed." *Lambert v. Parrish*, 492 N.E.2d 289, 291 (Ind.1986). The *Lambert* court held that a man who slipped and fell while running to see his wife, whom he had just learned had been involved in a car accident, was not a "rescuer." *Id.* The court stated: "We hold a rescuer must in fact attempt to rescue someone. A rescuer is one who actually undertakes physical activity in a reasonable and prudent attempt to rescue." *Id.*

■ Our supreme court next discussed the rescue doctrine in 1995, also defining it as an issue of duty when it said, "Notably, we are deciding the scope of duty under the rescue doctrine as a matter of law based upon the relationship of the parties, the foreseeability of harm, and public policy, *see Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, not based on assumption of risk." *Heck v. Robey*, 659 N.E.2d 498, 502 n. 3 (Ind.1995).[3] The court observed that the policy behind the rescue doctrine was "to encourage and reward humanitarian acts." *Id.* at 502. It also stated that the rescue doctrine was designed to protect rescue attempts of a "spontaneous and impulsive character...." *Id.* Further,

> the "rescue doctrine" under any conception of it contemplates a voluntary act by a rescuer who in an emergency attempts a "rescue" prompted by a spontaneous, humane motive to save human life, and which "rescue" the rescuer had no duty to attempt in the sense of a legal obligation or in the sense of a duty fastened on him by virtue of his employment.

*Id.* (quoting *Nastasio v. Cinnamon*, 295 S.W.2d 117, 120 (Mo.1956)). Quoting Justice Cardozo, the court also said " 'there must be unbroken continuity between the commission of the wrong and the effort to avert its consequences.' " *Id.* (quoting *Wagner v. International Ry. Co.*, 232 N.Y. 176, 133 N.E. 437 (1921)). Ultimately, the Heck court concluded that the rescue doctrine did not apply in the case before it, where a professional rescuer responded to

---

**3.** If the rescue doctrine concerns duty, it should be noted that duty ordinarily is a question of law for a court to decide. *Rhodes v. Wright*, 805 N.E.2d 382, 386 (Ind.2004). "Sometimes, however, the existence of a duty depends upon underlying facts that require resolution by the trier of fact." *Id.* The parties seem to assume that there is at minimum a mixed question of law and fact as to whether the rescue doctrine applied in this case.

a 911 call for assistance, because the rescue attempt was "not the result of a continuous transaction of spontaneous, impulsive, and gratuitous reaction" to a peril. *Id.* at 503.

We addressed the rescue doctrine in *Wright v. International Harvester Co., Inc.*, 528 N.E.2d 837, 841 (Ind.Ct.App. 1988), *trans. denied.* This case, unlike *Lambert* and *Heck,* discusses the doctrine not in terms of duty but as a response to a claim of contributory negligence on the plaintiff's part.[4] Specifically, this court stated, " '[i]t is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or the chattels of himself or a third person from harm.' " *Wright,* 528 N.E.2d at 841 (quoting Restatement (Second) of Torts § 472 (1965)). " '[T]he law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons.' " *Id.* (quoting *Rodriguez v. New York State Thruway Auth.,* 82 A.D.2d 853, 440 N.Y.S.2d 49, 51 (N.Y.App.Div.1981)). " 'The extent of the risk which the volunteer is justified in assuming under the circumstances increases in proportion to the imminence of the danger and the value to be realized from meeting the danger and attempting to remove or eliminate the hazard....' " *Id.* (quoting *Moravec v. Moravec,* 216 Neb. 412, 343 N.W.2d 762, 764 (1984)). "Whether the rescuer acted reasonably in light of the emergency confronting him is generally a question of fact." *Id.* This court held there was a question of fact precluding summary judgment as to whether a woman was a "rescuer" where

she jumped in front of a tractor rolling down a hill on which her five-year-old son was riding, in a vain attempt to stop it. *Id.* at 841–42.

There are no Indiana cases paralleling the facts of this case. Each party here is able to cite a handful of cases from other jurisdictions that support their position regarding the applicability of the rescue doctrine where a plaintiff was injured while attempting to direct traffic or provide similar assistance after an accident caused by the defendant's negligence. *Compare, e.g., McNair v. Boyette,* 282 N.C. 230, 192 S.E.2d 457 (1972) (holding rescue doctrine inapplicable), with *Sweetman v. State Highway Dep't,* 137 Mich.App. 14, 357 N.W.2d 783 (1984) (holding rescue doctrine applicable).[5] In sum, there is no clear answer in either Indiana caselaw or that of other jurisdictions as to whether Byard was a "rescuer" entitled to a rescue doctrine jury instruction. In fact, it is not even clear whether the doctrine is a means of establishing a defendant's duty to a plaintiff, or a means of establishing proximate cause, or a means to avoid findings of contributory or comparative negligence, or some combination of all three. The *Heck* opinion does indicate that whether the doctrine applies is a duty issue—a question of law. It seems, however, that even if a duty is established under the doctrine, the overall reasonableness of a plaintiff's rescue efforts will factor into a comparative fault assessment—a question of fact.

The underlying public policy behind the rescue doctrine is to encourage Good Samaritan efforts. Given that policy, we conclude it is logical to encourage persons who come upon a traffic accident to help avoid a secondary accident by voluntarily

---

4. The accident at issue in *Wright* occurred before passage of the Comparative Fault Act.

5. The *Sweetman* court also held that the rescue doctrine survived the abolition of contrib-

utory negligence and the adoption of comparative fault. *See Sweetman,* 357 N.W.2d at 789. Star and Cottingham do not argue to the contrary.

directing traffic around the first accident, without fear of being unable to recover any damages if injured while providing that assistance. It also likely is a common occurrence, and thus reasonably foreseeable, that volunteers direct traffic in such situations before professional law enforcement officers arrive on the scene, or in situations, possibly including the one before us, where no law enforcement officers are ever called.

*Heck* and *Lambert* placed outer limits on when the rescue doctrine can be invoked. Namely, it does not apply in situations where a person remote from the scene of an accident is notified of, or is called upon to respond to, an emergency situation. Here, however, Byard was a first-hand witness of the danger Cottingham was creating by backing his semi onto 421 and completely blocking the southbound lane. Such activity created an immediately apparent danger to the safety of other motorists on 421 that Byard and others attempted to alleviate by actual physical effort. There was a continuous, spontaneous link between Cottingham's original negligence and Byard's gratuitous attempts to protect other motorists from that negligence. We conclude that the rescue doctrine properly applies to this particular set of facts. The trial court did not abuse its discretion by instructing the jury on the rescue doctrine.

## II. Incurred Risk Instruction

■ Next, Star and Cottingham argue the trial court erred in refusing to give their tendered instruction on incurred risk to the jury. The instruction Star and Cottingham tendered was based on Indiana Pattern Civil Jury Instruction 5.41 and read:

> The Plaintiff incurs the risk of injury if he actually knew of a specific danger, understood the risk involved, and voluntarily exposed himself to that danger. Incurred risk requires much more than the general awareness of a potential [for] mishap. Determining whether the plaintiff has incurred the risk of injury requires a subjective analysis focusing upon:
>
> 1. The Plaintiff's actual knowledge and appreciation of the specific risk; and
>
> 2. The Plaintiff's voluntary acceptance of that risk.

App. p. 43.

Our supreme court has said that, with adoption of the Comparative Fault Act ("the Act"), incurred risk is no longer a complete defense to a negligence action. *Heck*, 659 N.E.2d at 504. However, incurred risk clearly still is a relevant concept in assessing whether a plaintiff was partially at fault for his or her injuries, pursuant to the Act. "Fault," for purposes of the Act, "includes unreasonable assumption of risk not constituting an enforceable express consent, *incurred risk*, and unreasonable failure to avoid an injury or to mitigate damages." Ind.Code § 34–6–2–45(b) (emphasis added); *see also Heck*, 659 N.E.2d at 504–05 ("As a component of fault, [incurred risk] is subject to the Act's apportionment scheme that reduces or eliminates the plaintiff's recovery depending on the degree of the plaintiff's fault.").[6]

■ "Incurred risk requires a 'mental state of venturousness' and a 'conscious, deliberate and intentional embarkation

---

**6.** Editors for West Publishing have said that *Heck* was "abrogated" by *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104 (Ind.2002). We are not sure we agree with that assessment. *Heck* indicated that incurred risk and other similar common law defenses were no longer a complete defense to a negligence action, but still retained viability for purposes of assessing the degree of a plaintiff's fault under the Act and apportioning damages accordingly. *See Heck*, 659 N.E.2d at 505. *Johnson*, in discussing the doctrine of superseding cause, indicated that the Act did not affect the requirement of proximate cause

upon the course of conduct with knowledge of the circumstances.'" *Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 242 (Ind. 1997) (quoting *Beckett v. Clinton Prairie Sch. Corp.,* 504 N.E.2d 552, 554 (Ind. 1987)). A plaintiff must accept a specific risk of which he or she has actual knowledge. *Id.* Star and Cottingham assert that Byard was aware of the specific risk of being struck by a vehicle when he decided to go onto State Road 421 to try to direct traffic.

The jury here was given complete instructions regarding comparative fault, Star and Cottingham's burden to prove that defense, proximate cause, and intervening cause as breaking the connection between a defendant's original negligence and a plaintiff's injury. In addition, the jury was instructed about a pedestrian's duty to maintain a proper lookout when walking onto a road where there is not a crosswalk, and that an intoxicated person is held to the same standard of care as a sober person. Both of these factors formed the basis of Star and Cottingham's incurred risk claim—that Byard should not

have been wandering onto a public highway after drinking.

■■ "The selection of instructions is left to the sound discretion of the trial court so long as the instructions as a whole accurately and completely set forth the elements of the parties' claims and defenses." *Willis,* 839 N.E.2d at 1189. Although the precise phrase "incurred risk" was not used in any of the jury instructions, we conclude the jury was adequately advised of the principles underlying the incurred risk doctrine.[7] *See Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 110 (Ind. 2000) (holding trial court did not abuse its discretion in refusing to give defendant's tendered instruction on superseding cause, even though evidence supported giving such an instruction, where trial court gave adequate instruction on proximate cause). The trial court did not abuse its discretion in refusing to give an instruction on incurred risk.[8]

### III. Peremptory Juror Challenges

■■■■■■ Star and Cottingham's final claim is that they should not have been

in a negligence action and that a trial court may, but is not required, to give a superseding cause instruction as an aid in determining liability if the evidence supports it. *See Johnson,* 762 N.E.2d at 109–10. Both cases indicate that common law defenses such as incurred risk and superseding cause no longer are complete defenses, but remain valid concepts for assessing degrees of fault and apportioning damages under the Act.

7. At oral argument, we explored at length the question of whether the rescue doctrine and incurred risk are mutually exclusive concepts. The two certainly stand in some tension, as the rescue doctrine can be seen as excusing or justifying a plaintiff's decision to undertake a risky activity because of a need to protect others from harm caused by the defendant's negligence. A rescue, although justified, can be unreasonably performed, however. We believe the jury instructions actually given adequately advised the jury of this. The jury also must have concluded Byard's rescue ef-

forts were at least partially unreasonable because it found him twenty percent at fault for his injuries. We need not definitively resolve here whether it could ever be appropriate to give jury instructions on both the rescue doctrine and incurred risk in the same case.

8. Byard also contends the incurred risk instruction Star and Cottingham tendered was incomplete, although it was a pattern instruction. His specific complaint is that the instruction does not advise the jury that Star and Cottingham bore the burden of proving incurred risk, or that any incurred risk must have been a proximate cause of Byard's injuries, or how to assess fault against Byard if the jury found incurred risk. As noted by Byard, Star and Cottingham did not tender Pattern Civil Jury Instruction 9.17, "Incurred Risk—Burden of Proof—Comparative Fault," which addresses these issues. We believe it to be advisable that pattern instruction 9.17 also be given in cases where pattern instruc-

forced to share their peremptory juror challenges with Peters, the driver of the car that struck Byard. A trial court has some discretion to direct the manner of impaneling juries and the manner of exercising peremptory juror challenges. *Kranda v. Houser–Norborg Med. Corp.,* 419 N.E.2d 1024, 1038 (Ind.Ct.App.1981). Reasonable limitations on the right to peremptory challenges may be fixed so long as the right of challenge is not taken away, and reasonable opportunity is given to challenge. *Cochran v. State,* 269 Ind. 157, 159, 378 N.E.2d 868, 869 (1978).

Indiana Trial Rule 47(C) states:

(1) Each side shall have three (3) peremptory challenges.

(2) In addition to the peremptory challenges under subsection (1), each side is entitled to:

(a) one (1) peremptory challenge if the court directs that one (1) or two alternate jurors are to be impanelled; or

(b) two (2) peremptory challenges if the court directs that three (3) alternate jurors are to be impanelled.

(3) The additional peremptory challenges under subsection (2) may be used only against alternate jurors and the peremptory challenges under subsection (1) may not be used against alternate jurors.

Indiana Code Section 34–36–3–3 is worded identically, except for one difference. The statute, unlike the trial rule, specifies that each "party" in a civil case has three peremptory challenges, not each "side."

The Indiana Supreme Court many years ago addressed the predecessor to Section 34–36–3–3 and its granting of three peremptory challenges to each "party." *See Snodgrass v. Hunt,* 15 Ind. 274 (1860). There were multiple defendants in that

case and they had moved to each have three peremptory challenges, rather than having to share those challenges. The trial court denied the motion and our supreme court affirmed. It held that the term "each party" in the statute meant all persons named as plaintiffs and all persons joined as defendants, not each plaintiff and defendant separately. *Id.* at 276. Thus, the trial court properly allowed all of the defendants as a whole to have only three peremptory challenges to exercise between them. *See id.*

More recently, this court has allowed some leeway to trial courts to allow multiple parties to exercise their own, separate peremptory challenges. In *Christensen v. Sears, Roebuck and Co.,* 565 N.E.2d 1103, 1105 (Ind.Ct.App.1991), *trans. denied,* the court stated, "A majority of jurisdictions allow separate sets of peremptory challenges to parties on the same side but with antagonistic interests." The court continued:

In these jurisdictions, the determinative factor of whether to give separate peremptory challenges to parties on the same side is the level of antagonism between them. After voir dire and prior to the exercise of the peremptory challenges, the trial judge must decide whether antagonism exists. Factors that the trial court considers in determining antagonism are: whether the defendants allege fault of the other defendants; whether the defendants have different defenses; whether the defendants collaborate to select jurors to strike; and whether only one defendant could be found liable or defendants could be liable equally. We align with the majority allowing separate sets of peremptory challenges to parties on the same side with antagonistic interests.

*Id.* at 1106 (citations omitted). We then reviewed the trial court's decision to allow

tion 5.41 on incurred risk is requested and given.

separate sets of peremptory challenges to multiple defendants for an abuse of discretion, found no abuse of discretion, and affirmed. *Id. Christensen* was cited with approval in *Northern Indiana Public Service Co. v. G.V.K. Corp.*, 713 N.E.2d 842 (Ind.Ct.App.1999), *trans. denied.*

In any event, we need not determine whether *Snodgrass* controls this case. Even if we were to apply the "antagonistic interests" analysis of *Christensen* and *G.V.K.* and to find such antagonism here, those cases required the existence of actual prejudice to a party with respect to the allocation of peremptory challenges before reversal could occur. We find insufficient evidence of such prejudice here.

 "The complaining party has the burden of showing actual prejudice." *Christensen*, 565 N.E.2d at 1106. A bald assertion that an improper allocation of peremptory challenges made the jury selection process tainted and unfair is not enough to establish prejudice. *Id.* at 1107; *see also G.V.K. Corp.*, 713 N.E.2d at 847. Star and Cottingham rely heavily upon *Tamburello v. Welch*, 392 S.W.2d 114 (Tex. 1965). The Texas Supreme Court took a more expansive view of reversible error on the issue of peremptory challenges than did this court in *Christensen* or *G.V.K.* It held that although the harmless error rule applied, "As a practical matter, however, the appellant will usually be unable to show that an improper judgment probably resulted from an error of this nature." *Id.* at 117. Because the defendants had exhausted all of their allotted peremptory challenges, and because the evidence was "sharply conflicting," they had met their burden of showing that the denial of separate peremptory challenges rendered the trial "materially unfair." *Id.* at 118.

Here, it was counsel for Star and Cottingham that exercised all of the challenges; it is very unclear from the record how much input counsel for Peters had into how the challenges would be exercised. This would seem to indicate that counsel for Star and Cottingham made the final decision regarding the exercise of all four peremptory challenges. Even assuming that counsel for Peters had input into the selection of peremptory challenges, Star and Cottingham made no offer of proof that they would have exercised any additional peremptory challenges if given the chance, or that there was disagreement with counsel for Peters as to how their four peremptory challenges would be exercised.

Star and Cottingham seem to contend, pursuant to *Tamburello*, that any improper restriction on the number of peremptory challenges to which they were entitled is an almost automatic reversible error. That approach is inconsistent with Indiana law. A litigant claiming reversible error in the allocation of peremptory challenges must do more than make a bald assertion of prejudice and must point to *something* in the record that demonstrates some level of actual prejudice. Star and Cottingham have not done so here. Even if there was error in the allocation of peremptory challenges, it is not reversible error.

### Conclusion

The trial court did not abuse its discretion by instructing the jury on the rescue doctrine and refusing to instruct it on incurred risk. Star Transport and Cottingham have failed to demonstrate any actual prejudice from the manner in which the trial court assigned peremptory challenges. We affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.