**Mark P. FRANCIOSE and Ray Ramirez, III, Appellants– Defendants,**

v.

**Aaron A. JONES, Appellee–Plaintiff.**

**No. 64A03–0802–CV–00060.**

Court of Appeals of Indiana.

May 29, 2009.

Garrett V. Conover, Gregory M. Bokota, Bokota Ehrhardt McCloskey Wilson & Conover, Merrillville, IN, Eric D. Johnson, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellants.

Kenneth J. Allen, William Lazarus, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

While driving through snowy weather, Ray Ramirez, III, lost control of his truck and crashed into guardrails on both sides of an interstate highway. The truck became stuck in the passing lane of the interstate. The occupants of the truck made their way to the side of the interstate. After another motorist stopped her car to block traffic and two semi-trucks created a barrier between the stranded truck and approaching traffic, Aaron A. Jones, one of Ramirez's passengers, approached Ramirez's truck to push it off the interstate so that other motorists would not crash into it. Mark P. Franciose came upon the traffic jam, drove his car on the shoulder of the interstate, and hit Jones, causing injuries. Jones sued Franciose and Ramirez. During the jury trial, Franciose unsuccessfully objected to the testimony of Jones's expert witness. The jury found in Jones's favor and awarded damages against both defendants. Both defendants appeal. Among other things, we conclude that Franciose did not sufficiently alert the trial court that he desired an inquiry pursuant to Indiana Evidence Rule 702(b) on the admissibility of Jones's expert witness's testimony. Further, we conclude that the superseding cause doctrine does not require reversal of the jury's verdict against Ramirez. We affirm.

### Facts and Procedural History

On the afternoon of December 13, 2003, Ramirez, Jones, and Ramirez's fiancee, Jamie Morris, were riding in Ramirez's pickup truck on Interstate 65 near Demotte,

Indiana. Ramirez was driving. It began to snow, and the three observed a van and a car that had apparently slid off of the interstate. Ramirez slowed to about 55 miles per hour but left the truck's cruise control engaged as he drove onto a bridge. When the truck started to slide, Ramirez spun the steering wheel but lost control over the vehicle. The truck hit the concrete barrier on one side of the bridge, spun completely, struck the barrier on the other side of the bridge, and came to rest in the northbound passing lane of the interstate. The interstate had only two lanes running in each direction. The truck's airbags deployed, and the truck filled with smoke. Mistakenly believing the truck was on fire, Ramirez, Jones, and Morris rushed out of the truck after activating the emergency lights. They walked down the bridge to a grassy area in the median of the interstate.

From the median, the group witnessed semi-trucks skid by the disabled truck, missing it by "not even inches." Tr. Vol. I p. 49.[1] A stranger named Danielle arrived to assist Ramirez, Jones, and Morris, stopping her car in the passing lane behind Ramirez's disabled truck and turning on her emergency lights. Danielle invited Morris, whose leg had been injured in the accident, to sit in her car. She also provided flares to Ramirez. Ramirez attempted to light the flares to alert approaching traffic of the crash, but the flares would not stay lit because of the snow and wind. It was dark, and the only light on the road was illumination from headlights.

Traffic backed up behind Danielle's car and Ramirez's truck in the passing lane and also in the driving lane of the inter-

---

1. The court reporter for the trial court did not consecutively number the pages of the transcript regardless of the number of volumes as required by Indiana Appellate Rule 28(A)(2); therefore, citations to the transcript are referred to by their volume number and the page number within that volume.

state. Two semi-trucks, one in each lane, approached the crash site slowly with their flashing lights activated. Behind the semi-trucks, traffic was backed up "pretty far." *Id.* at 53. The semi-trucks created a temporary barrier across both lanes of the interstate. *Id.* at 54.

A man stopped and offered to help move the disabled truck off of the road. Jones decided to move the truck with him and walked into the passing lane where the truck was stranded. Danielle, with Morris as a passenger, pulled her car forward with the intent of passing the disabled truck and pulling off of the interstate. Suddenly, however, a car moving at approximately sixty miles per hour appeared on the left shoulder of the interstate. The car, driven by Franciose, struck Jones and then crashed into Ramirez's disabled truck. Jones sustained serious injuries to his foot.

Jones filed suit against Franciose and Ramirez, alleging that they acted negligently and caused him injury.[2] The case proceeded to a jury trial. During trial, the trial court made several rulings relevant to this appeal. First, the trial court allowed an expert witness to testify regarding Jones's future need for surgery in preemptive response to the anticipated testimony of another expert witness. Second, the trial court permitted an expert witness to testify whose methodology was challenged only once after the trial was underway. Third, the trial court excluded the testimony of a defense witness who failed to appear for his deposition and whose correct contact information had not been provided to Jones before trial. Finally, the court read a jury instruction that if Ramirez

acted negligently in crashing his truck and Jones acted to protect human life or property when responding to Ramirez's negligence, Ramirez could be held liable for Jones's injuries.

The jury found in Jones's favor and awarded damages against both defendants. Specifically, the jury found total damages of $1,250,000 and apportioned 23% fault to Ramirez, 65% fault to Franciose, and 12% fault to Jones. Appellant Ramirez's App. p. 123. Franciose and Ramirez both filed motions to correct error, raising several issues, which the trial court denied. They now appeal, tendering separate briefs.

### Discussion and Decision

On appeal, Franciose and Ramirez raise a number of issues, which we restate and reorder as follows: (1) whether the trial court abused its discretion by refusing to strike testimony from an expert witness which preemptively rebutted the anticipated testimony of an expert witness for Franciose; (2) whether the trial court abused its discretion in admitting the testimony of an expert witness whose methodology Franciose challenged; (3) whether the trial court abused its discretion by excluding the testimony of defense witness Matthew Lackey; (4) whether the trial court erred in denying Ramirez's motion for a directed verdict because it improperly failed to recognize Franciose's actions as an intervening and superceding cause of Jones's injuries; (5) whether the trial court erred in its instruction to the jury regarding the rescue doctrine; and (6) whether the verdict against Ramirez is excessive.

---

**2.** Jones's complaint spells Franciose's last name as "Franciosa," Appellant Ramirez's App. p. 13, but Franciose clarified the spelling at trial, Tr. Vol. II p. 177. The complaint also lists Franciose's mother, the owner of the car driven by Franciose, as a defendant. Appellant Ramirez's App. p. 13. However, she was no longer a defendant at the time of trial. *See* Tr. Vol. IV p. 153.

## I. Rulings on the Admissibility of Evidence

Franciose challenges the trial court's admission of testimony from two expert witnesses and the exclusion of testimony from one defense witness. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Norfolk S. Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 100 (Ind.Ct.App.2005), *trans. denied.* This standard also applies to a trial court's decision to admit or exclude expert testimony. *Id.* We will reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 101. A trial court's decision to admit or exclude evidence will not be reversed unless prejudicial error is clearly shown. *Id.* Likewise, a trial court has broad discretion in ruling on a motion to strike. *Id.* at 100.

### A. Preemptive Rebuttal by an Expert Witness

■ Franciose contends that the trial court committed reversible error by refusing to strike the testimony of Dr. Yarkony. As a preliminary matter, Jones contends that Franciose has waived this argument by failing to raise it in his motion to correct error. Appellee's Br. p. 33–34. Jones argues that Franciose's challenge to Dr. Yarkony's testimony is, at its heart, a claim that the jury's verdict is excessive. As such, according to Jones, Indiana Trial Rule 59(A) and (D) dictate that the argument be waived on appeal. We disagree. While Indiana Trial Rule 59(A) requires that a party wishing to appeal a jury verdict as "excessive" first file a motion to correct error with the trial court,[3] and Indiana Trial Rule 59(D) requires the party to address the claimed error and bases with specificity, a challenge such as this to an evidentiary ruling by the trial court is not one of those matters that a party must argue in a motion to correct error in order to preserve the issue for appeal. We proceed to address Franciose's argument.

Before trial, the trial court entered an order requiring that Jones submit to an independent medical examination performed by Dr. Michael Owens. Appellant Franciose's App. p. 38–39. The order also provided Jones "the right to name a rebuttal witness to Doctor Owens." *Id.* at 39.[4] During trial, Jones called Dr. Yarkony as an expert witness. Dr. Yarkony testified about Jones's future medical needs and the attendant costs stemming from his foot injuries. After Dr. Yarkony finished testifying, Franciose made an oral motion to strike his testimony, arguing that Dr. Yarkony, as a rebuttal witness, should have testified after Dr. Owens. Tr. Vol. II p. 174–75. The trial court delayed ruling on the motion. When Franciose reiterated his argument right before Dr. Owens testified, the trial court responded that its rul-

---

**3.** Indiana Trial Rule 59(A) provides:
 A Motion to Correct Error is not a prerequisite for appeal, except when a party seeks to address:
 (1) Newly discovered material evidence, including alleged jury misconduct, capable for production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial; or
 (2) A claim that a jury verdict is excessive or inadequate.

*All other issues and grounds for appeal appropriately preserved during trial may be initially addressed in the appellate brief.*
(Emphasis added).

**4.** The order also required Dr. Owens to submit to a deposition and produce his report before or at the deposition and required Jones to name his rebuttal witness and produce the witness's opinion and report by a certain date. Appellant Franciose's App. p. 38–39.

ing "probably would depend on what your witness testifies to and whether it's what Dr. Yarkony actually said as rebuttal or goes beyond what would be rebuttal. So that's the best I can guide you at this point...." Tr. Vol. IV p. 3. Franciose failed to raise the issue again after Dr. Owens testified.

■ First, Franciose has waived his challenge to Dr. Yarkony's testimony because he failed to make a motion to strike the testimony after Dr. Owens testified. The trial court delayed ruling upon Franciose's earlier motions to strike the evidence and commented that its ultimate ruling on the motion would "probably ... depend on what [Dr. Owens] testifies to and whether it's what Dr. Yarkony actually said as rebuttal or goes beyond what would be rebuttal." *Id.* Where evidence is admitted subject to being connected up later, and no subsequent motion to strike the evidence is made, any error in the admission of the evidence is waived. *Redslob v. Redslob*, 433 N.E.2d 819, 822 (Ind.Ct.App.1982).

■ Further, Franciose is incorrect that Dr. Yarkony's testimony was not proper rebuttal evidence. The trial court had the discretion to allow Dr. Yarkony to testify before Dr. Owens testified, Ind. Evidence Rule 611(a), and to admit Dr. Yarkony's testimony conditionally, subject to the content of Dr. Owens's subsequent testimony, Ind. Evidence Rule 104(b). By eliciting testimony from Dr. Owens about the chance of Jones's future need for surgery, Franciose opened the door to rebuttal evidence on this topic from Dr. Yarkony. Indeed, the very reason for presenting evidence that it is uncertain whether Jones will ever need surgery was to limit any damages award. Because Dr. Owens opined that Jones would probably not require surgery in the future, Tr. Vol. IV p. 27–28, Dr. Yarkony's testimony about

Jones's need for future surgery and the resulting costs was proper rebuttal evidence. Had Franciose renewed his motion to strike this evidence, the trial court would not have abused its discretion by refusing to strike the testimony.

## B. Evidence Rule 702(b) Challenge in Midst of Trial

Franciose's next argument is that the trial court abused its discretion by permitting Anthony M. Gamboa, Ph.D., a vocational economic analyst, to testify regarding Jones's diminished future earning capacity. Franciose argues that "the trial court committed reversible error by permitting Dr. Gamboa to testify because his testimony lacked sufficient reliability to be admissible." Appellant Franciose's Br. p. 17.

■ Franciose objected at trial to Dr. Gamboa's testimony. Tr. Vol. III p. 52. After a short discussion with counsel for the parties, the trial court overruled the objection. *Id.* at 54. After trial, Franciose filed a motion to correct error, arguing in part that the verdict is excessive because "[t]he evidence regarding his alleged loss in future earning capacity is irrelevant because the scientific methodology upon which it is based is flawed. Consequently, the evidence is not sufficient as a matter of law to support the verdict." Appellant Ramirez's App. p. 128. The trial court denied the motion, and Franciose now appeals the denial of his motion to correct error. A trial court has considerable discretion to grant or deny motions to correct error. *Young v. Ind. Dep't of Natural Res.*, 789 N.E.2d 550, 554 (Ind.Ct. App.2003), *trans. denied.* We review the trial court's ruling on a motion to correct error for an abuse of discretion. *Id.*

■ As a preliminary matter, the parties agree that Dr. Gamboa is an expert

witness but dispute whether his testimony constitutes scientific testimony. During trial, before testifying to his opinions regarding Jones's diminished future earning capacity, Dr. Gamboa explained his area of expertise as follows: "What I do is define what effect a disability has on a person's capacity to work and earn money. I function like an appraiser, except I'm appraising human beings who have become disabled in defining what loss of earning capacity is probably as a result of a disability." Tr. Vol. III p. 43. Dr. Gamboa's testimony about his analysis and conclusions constitutes scientific testimony. *See Cox v. Matthews*, 901 N.E.2d 14, 22 (Ind.Ct.App.2009) (examining Dr. Gamboa's testimony under Indiana Evidence Rule 702(b)), *reh'g denied*, *Kempf Contracting & Design, Inc. v. Holland–Tucker*, 892 N.E.2d 672, 677–78 (Ind.Ct. App.2008) (discussing admissibility of testimony from a vocational economist pursuant to Indiana Evidence Rule 702(b)), *trans. denied.*

█ The basis upon which a party may object to scientific testimony by an expert witness is Indiana Evidence Rule 702(b), which provides: "Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." In the seminal case, *Steward v. State*, our Supreme Court explained how to apply Indiana Evidence Rule 702(b):

> The concerns driving *Daubert [v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), interpreting Federal Rule of Evidence 702] coincide with the express requirement of Indiana Rule of Evidence 702(b) that the trial court be satisfied of the reliability of the scientific principles involved. Thus, although not binding upon the determination of the state evidentiary law issues, the federal

evidence law of *Daubert* and its progeny is helpful to the bench and bar in applying Indiana Rule of Evidence 702(b). *Steward v. State*, 652 N.E.2d 490, 498 (Ind. 1995), *reh'g denied.* Therefore, it behooves trial courts to consider the factors enunciated in *Daubert* when deciding whether to admit an expert witness's scientific testimony. And, as we have recognized, the trial court may need to consider a list of factors pursuant to *Daubert:*

> In *Daubert,* the Supreme Court held that for scientific knowledge to be admissible under Federal Evidence Rule 702, the trial court judge must determine that the evidence is based on reliable scientific methodology. To assist trial courts in making this determination, the Supreme Court outlined a nonexclusive list of factors that may be considered: whether the theory or technique can be or has been tested, whether the theory has been subjected to peer review and publication, whether there is a known or potential error rate, and whether the theory has been generally accepted within the relevant field of study. Publication in a peer-reviewed journal, while relevant, is not to be dispositive of the issue of scientific validity. The focus of the admissibility test must remain on the methodology of the theory or technique, not on the conclusions generated.

*Ollis v. Knecht*, 751 N.E.2d 825, 829 (Ind. Ct.App.2001) (citing *Daubert*, 509 U.S. at 592–95, 113 S.Ct. 2786), *reh'g denied*, *trans. denied.* There is "no specific 'test' or set of 'prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind.1997). Rather, a *Steward* analysis will involve an inquiry into any of the aforementioned factors and any other considerations that assist the trial court in determining whether "the

scientific principles upon which the expert testimony rests are reliable." Ind. Evidence Rule 702(b).

■ The trial judge is the gatekeeper for expert evidence proffered under Indiana Evidence Rule 702. *Fueger v. Case Corp.*, 886 N.E.2d 102, 105 (Ind.Ct. App.2008), *aff'd on reh'g, trans. denied.* In order for the trial court to know that a *Steward* analysis needs to be conducted, however, the party opposing the evidence needs to alert the trial court that the gate is squeaking.

Here, Franciose failed to sufficiently alert the trial court that he objected to Dr. Gamboa's testimony pursuant to Indiana Evidence Rule 702(b). At trial, he objected as follows:

> Before we get in—I'll object to any use of numbers because there has been an insufficient documentation or foundation of the type of information that this witness would rely upon to generate those numbers. Specifically, it is my understanding from reading Dr. Gamboa's report which was provided to us, that he bases his assumptions on generic descriptions of what a bachelor in science might make without any regard to whether that's a nurse or a technician or a geologist. It also assumes that Aaron would necessarily be successful and go into that field. And we've heard his intentions but we all know that most people, including Dr. Gamboa here who testified that he started out as a high-school [sic] teacher and now he's in this assessment field and may not end up. So I think it's all speculative and these numbers have not been shown sufficiently to the Court or to us, to justify putting these figures before the jury.

Tr. Vol. III p. 52. This objection did not alert the trial court that Franciose desired an inquiry into the reliability of the scientific principles upon which Dr. Gamboa rest-

ed his testimony. This is evidenced by the fact that the court did not engage in *any* discussion regarding the test for admissibility of expert scientific testimony under that rule. Nor did the court hear any additional evidence to enable it to determine that it was "satisfied that the scientific principles upon which [Dr. Gamboa's] testimony rests are reliable." Ind. Evidence Rule 702(b). Instead, after hearing brief arguments from counsel, the trial court ruled, "Thank you, overrule the objection." Tr. Vol. III p. 54.

■ Additionally, there was no discussion of the list of *Daubert* factors. In the heat of trial, Franciose's objection could have appeared to the court and the other parties to be an objection to the data used by Dr. Gamboa rather than his scientific methodology. If Franciose desired a ruling on the reliability of Dr. Gamboa's scientific methodology, it was his responsibility to make that clear to the court. Grounds for objection must be specific, and any grounds not raised in the trial court are not available on appeal. *Grace v. State*, 731 N.E.2d 442, 444 (Ind.2000), *reh'g denied.* Where a party's objection under a particular evidentiary rule is not specific enough, the party waives that issue on appeal. *Burge v. Teter*, 808 N.E.2d 124, 130 (Ind.Ct.App.2004) (holding that party waived the argument that a witness's testimony was inadmissible under Indiana Evidence Rule 701 because the party "never expressly asked the court to rule on the admissibility of his testimony under the first prong of Rule 701"). The failure to raise a specific objection deprives the trial court of the opportunity to rule on the admissibility of the challenged evidence on that ground. *See id.* Here, Franciose's objection did not sufficiently alert the trial court that he desired a ruling under Indiana Evidence Rule 702(b). We cannot

say that the trial court abused its discretion in allowing Dr. Gamboa to testify.

We observe that, while in some cases it may be obvious to the trial court that there is a serious question about the admissibility of proffered expert evidence, in most cases, including the case before us today, whether an expert's scientific testimony meets the requirements of Indiana Evidence Rule 702(b) will not be apparent. In all cases, but particularly so in these latter cases, it is wise for a party to inform the trial court before trial that it wishes to raise an objection to the reliability of the expert witness's scientific methodology. Where a party waits until trial to raise a challenge requiring a *Steward* analysis, that party places a significant burden upon the trial court by asking the court to halt its proceedings and engage in what will possibly be a very lengthy hearing separate from the trial, often while an impaneled jury sits idle. In *De Puy Inc. v. Biomedical Engineering Trust*, 216 F.Supp.2d 358, 372–73 (D.N.J.2001), an exchange during the pretrial conference between the court and counsel for both parties exemplifies a trial court's concern about parties raising a *Daubert* issue for the first time in the midst of trial:

> [Appellee's Counsel]: I may have to bring my expert [Shanley], but I don't understand—
>
> COURT: If he's going to bring his expert, do I have a *Daubert* situation?

[Appellant's Counsel]: No.

The parties were further instructed:

> COURT: My point is I want to be able to look at these issues ahead of time. I don't want to be blind-sided by anything.... If there is anything that I need to look at, I want to know right now. I do not want to be surprised .... I do not want to be caught between a rock and a hard spot. If I make a mistake, fine, have at it, but I don't want to be in a [difficult] position if you were pushing *Daubert,* I don't think it's fair for me to have a *Daubert* hearing in the middle of trial. That's the type of [issue] I'm trying to get at.

(Citations and footnotes omitted). Furthermore, by waiting until trial to request a *Steward* inquiry, a party runs the risk of lodging an ambiguous objection in the heat of trial. With these considerations in mind, it is good practice for a party to alert the trial court before trial that it objects to an expert's testimony under Indiana Evidence Rule 702(b). Further, it is wise for a trial court to include in a pretrial order that parties must raise this issue before trial. For the trial court to do so is within its discretion under Indiana Evidence Rule 611(a).[5]

## C. Exclusion of Defense Witness

 Franciose next argues that the trial court abused its discretion by excluding

**5.** Here, Franciose had ample opportunity before trial to review the report of Dr. Gamboa and take measures to challenge the admissibility of his expected testimony pursuant to Indiana Evidence Rule 702(b). *See* Ex. 18C (showing that Dr. Gamboa completed his report on August 3, 2007); 9/11/07 Hr. Tr. p. 31 (reflecting that Dr. Gamboa's report was provided to Franciose in August 2007). However, the record provided to us on appeal does not reflect whether Franciose ever alerted the trial court before trial that he intended to lodge an Indiana Evidence Rule 702(b) challenge to Dr. Gamboa's testimony. The transcript of a pre-trial hearing on motions *in limine* reflects that Franciose filed a motion to exclude Dr. Gamboa's testimony. 9/11/07 Hr. Tr. p. 47–48; *see also* Appellant Franciose's App. p. 14 (CCS reflects that Franciose filed a motion to exclude Dr. Gamboa on September 10, 2007). However, we have been unable to locate a copy of this motion in the appellate record, and the brief discussion regarding the motion during the hearing does not reveal the grounds for the motion.

the testimony of defense witness Matthew Lackey. He contends that it was difficult for both parties to locate Lackey and that it was unfair to exclude Lackey's testimony.

At trial, Franciose sought to call Lackey as a witness. Jones's counsel filed a motion to exclude Lackey's testimony, contending that Franciose had failed to properly disclose Lackey's contact information during discovery and had failed to comply with an order requiring Lackey to appear for a deposition as a prerequisite to testifying at trial. Tr. Vol. III p. 197–202. Counsel recounted as follows:

> As the Court knows, we have previously filed a motion on this issue regarding [Lackey and two other potential defense witnesses]. In 2005 we asked for these witness' [sic] addresses, contact information, etcetera. [Franciose's counsel] provided one address and a telephone number which apparently belongs to a female and she's had that telephone number for over two years. We tried to contact the person with that given phone number. Twice I've sent correspondence to [Franciose's counsel] asking him to supplement his discovery as to this issue. He said that the answers required no supplementation as he saw, that everything was accurate. Whereas none of those persons resided at the address that was given or have the telephone number that was given.
>
> The Court—when we brought this to the Court's attention, previously said that [Lackey and the two other witnesses] had to be deposed before they could testify in this matter. The Court entered that order on September 12, 2007. [Franciose's counsel] tried to schedule Matt Lackey's deposition, and it was scheduled for September 26, 2007, and Mr. Lackey failed to appear at his deposition. Therefore, in light of the

Court's prior order and lack of compliance with that order by Mr. Lackey, he should not be allowed to testify here today.

Id. at 197–98. See Appellee's App. p. 31 (trial court's September 12, 2007, order). After hearing argument from both parties and an explanation from Lackey about why he missed his scheduled deposition, the trial court granted Jones's motion to exclude Lackey's testimony "based on rules of trial procedure." Tr. Vol. III. p. 207.

 Franciose does not refute that he failed to provide reliable contact information for Lackey to Jones before the date on which Lackey missed his scheduled deposition, which was less than a week before the trial began. See id. at 199 (Franciose's counsel informing the trial court that he provided Lackey's contact information to Jones's counsel when Lackey failed to appear for his deposition); 200 (Jones's counsel informing the trial court that he received Lackey's telephone number on the day of the missed deposition). The "appropriate sanctions for failure to comply with a trial court's order concerning discovery is a matter committed to the sound discretion of the trial court." McCullough v. Archbold Ladder Co., 605 N.E.2d 175, 180 (Ind.1993) (citing Ind. Trial Rule 37; Patel v. State, 533 N.E.2d 580, 585 (Ind.1989); Logal v. Cruse, 267 Ind. 83, 368 N.E.2d 235, 238 (1977)). Here, while Lackey may have been a difficult witness to locate, before making its decision to exclude Lackey's testimony the trial court received information that Franciose knew how to contact him. Tr. Vol. III p. 203. During an offer of proof, the following exchange occurred between Jones's counsel and Lackey:

Q. [Franciose] had your email address, you had his, you've text[ed] each other,

phoned each other, you've been in contact; right?

A. Yeah, sure, sure.

*Id.* at 212. It is apparent that it was Franciose's own failure to timely share this contact information that led to the last-minute deposition, which Lackey then missed, and, ultimately, the trial court's decision not to subject Jones to a "trial by ambush." *Id.* at 213. We cannot say that the trial court abused its discretion by excluding Lackey's testimony.[6]

## II. Superseding Cause Doctrine

Next, Ramirez contends, without citation to the record, that he sought a directed verdict premised upon the argument that Franciose's negligence constituted an intervening, or superseding, cause of Jones's injuries that precludes the imposition of liability against Ramirez for the injuries. Appellant Ramirez's Br. p. 12. He argues that the trial court erroneously denied his motion.

Having reviewed the record, we cannot find any mention of Ramirez making such a motion for a directed verdict. Instead, the record reflects that *Jones* made an oral motion for a directed verdict pertaining to the superseding cause doctrine:

> THE COURT: ... You said you had a couple of motions for directed verdict?
> [COUNSEL FOR JONES]: The other is an oral motion, Your Honor. It's regarding the inapplicability of the superceding cause defense that Ray Ramirez has alleged. There was previous-

ly a motion in limine filed on this issue as well. The Courts took that under advisement. And we're once again, renewing that motion.

Tr. Vol. IV p. 107–08. The trial court denied Jones's motion, effectively ruling in Ramirez's favor. *Id.* at 113–14. We need not address Ramirez's claim of error in this regard further.

■ Ramirez also argues that the jury's verdict against him is untenable because of the superseding cause doctrine. Our Supreme Court has recognized that "'[l]iability may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission.'" *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1054 (Ind. 2003) (quoting *Control Techniques, Inc. v. Johnson,* 762 N.E.2d 104, 108 (Ind.2002)). The doctrine of superseding causation requires that "when a negligent act or omission is followed by a subsequent negligent act or omission so remote in time that it breaks the chain of causation, the original wrongdoer is relieved of liability." *Id.* A subsequent act is "superseding" when the harm resulting from the original negligent act "'could not have been reasonably foreseen by the original negligent actor.'" *Id.* (quoting *Control Techniques,* 762 N.E.2d at 107). "'Whether the resulting harm is "foreseeable" such that liability may be imposed on the original wrongdoer is a question of fact for a jury.'" *Id.* at 1055

---

**6.** Additionally, we question whether portions of Lackey's anticipated testimony would have constituted inadmissible speculation. Specifically, during an offer of proof, Lackey testified that he was "going to guess" Franciose's driving speed as fifty to fifty-five miles per hour at the time of the accident. Tr. Vol. III p. 211. A lay witness, such as Lackey, may only testify to opinions and inferences that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Ind. Evidence Rule 701. However, we need not reach the issue of whether Lackey's opinion or inference regarding speed was rationally based on his perceptions because we conclude that the trial court properly excluded Lackey's testimony due to Franciose's failure to timely disclose his contact information.

(quoting *Control Techniques,* 762 N.E.2d at 107).

Ramirez's argument on appeal that "Franciose's action was completely independent of the initial negligence of Ramirez in losing control of his vehicle and leaving it" on the interstate and that "Jones's foot injury was due solely to the actions of Franciose," Appellant Ramirez's Br. p. 12, is essentially that we should reweigh the evidence, which we cannot do, *Faulk v. Nw. Radiologists, P.C.,* 751 N.E.2d 233, 240 (Ind.Ct.App.2001), *trans. denied.* The trial court instructed the jury on the superseding cause doctrine. Tr. Vol. IV p. 226–27. During trial, the jury was presented with evidence that Ramirez drove his truck in a manner that caused the truck to spin out of control, hit guardrails on both sides of an interstate bridge, and come to rest in a lane of Interstate 65. The accident caused a backup of traffic on a slippery interstate highway. Meanwhile, Ramirez and his passengers were stranded along the side of the road. After observing semi-trucks almost crash into the stopped vehicle and perceiving a temporary barrier against approaching traffic, Jones walked toward Ramirez's truck to move it. At that point, Franciose's car traveled up the shoulder of the interstate and struck Jones. The foreseeability of Jones's injuries was a question of fact for the jury, *Paragon Family Rest.,* 799 N.E.2d at 1055, and the jury's determination that Jones's injuries were foreseeable in light of the situation created by Ramirez is sufficiently supported by the evidence. We perceive no error in this regard.

### III. Rescue Doctrine Instruction

Ramirez next contends that the trial court erred in instructing the jury about the rescue doctrine. In reviewing a trial court's decision to give or to refuse tendered instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions which are given. *Control Techniques,* 762 N.E.2d at 109 (citing *Fleetwood Enters., Inc. v. Progressive N. Ins. Co.,* 749 N.E.2d 492, 495 (Ind.2001)). The trial court has discretion in instructing the jury and will be reversed on the last two issues only when the instructions amount to an abuse of discretion. *Star Transp., Inc. v. Byard,* 891 N.E.2d 1099, 1102 (Ind. Ct.App.2008) (citing *Willis v. Westerfield,* 839 N.E.2d 1179, 1189 (Ind.2006)), *trans. denied.* However, we review whether an instruction correctly states the law *de novo. Id.* (citing *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893–94 (Ind. 2002)).

The Indiana Supreme Court has adopted the "rescue doctrine," which is the rule that "[o]ne who has, through his negligence, endangered the safety of another may be held liable for injuries sustained by a third person in attempting to save such other from injury." *Neal v. Home Builders, Inc.,* 232 Ind. 160, 111 N.E.2d 280, 284 (1953) (citation omitted), *reh'g denied.* The Court has explained that

> the 'rescue doctrine' under any conception of it contemplates a voluntary act by a rescuer who in an emergency attempts a 'rescue' prompted by a spontaneous, humane motive to save human life, and which 'rescue' the rescuer had no duty to attempt in the sense of a legal obligation or in the sense of a duty fastened on him by virtue of his employment.

*Heck v. Robey,* 659 N.E.2d 498, 502 (Ind. 1995) (quotation omitted), *abrogated on other grounds by Control Techniques, Inc.,* 762 N.E.2d 104. "The rescue doctrine is designed to encourage and reward humanitarian acts." *Id.* For a defendant to be

liable for a third person's injuries pursuant to the rescue doctrine, the third person must actually act to rescue someone who is endangered by the defendant's actions: "[A] rescuer must in fact attempt to rescue someone. A rescuer is one who actually undertakes physical activity in a reasonable and prudent attempt to rescue." *Lambert v. Parrish*, 492 N.E.2d 289, 291 (Ind.1986). Here, the trial court instructed the jury on the rescue doctrine as follows:

> A rescuer is one who undertakes physical activity in a reasonable attempt to rescue persons or property from imminent peril. The rescue doctrine is designed to encourage and reward humanitarian acts. If you fin[d] that Aaron Jones attempted to move the disabled vehicle off the roadway in a reasonable attempt to prevent further harm, then you may find that his actions were both reasonable and foreseeable as to Ray Ramirez.

Tr. Vol. IV p. 223–24. Ramirez contends that the trial court erred by giving this instruction because it is both unsupported by the evidence and an incorrect statement of the law.

### A. Evidence Supports the Instruction

■ Ramirez first argues that the trial court should not have given the instruction on the rescue doctrine because the facts of the case did not support it. He writes:

> [T]he evidence is uncontested. Jones had initially removed himself to a place of safety and stayed there for a period of not less than 15 minutes before perceiving the potential danger to approaching motorists and to Ramirez's vehicle. By that time, another motorist had stopped to lend assistance and had parked and activated her emergency flashers in an effort to prevent the perils

perceived by Jones. The rescue doctrine cannot, as a matter of law, operate to give rise to a duty extending between Ramirez and Jones under the facts of this case.... Jones was not reacting to an existing or imminent danger to human life.

Appellant Ramirez's Br. p. 7 (citations omitted).

We disagree. After Ramirez and his passengers hurried out of the disabled truck and into the median of the interstate, they witnessed semi-trucks skid by the disabled truck, missing it by "not even inches." Tr. Vol. I p. 49. Danielle, a stranger to the group, stopped her car in the passing lane behind Ramirez's disabled truck and turned on her emergency lights. Traffic backed up behind Danielle's car and Ramirez's truck in the passing lane and also in the driving lane of the interstate. Two semi-trucks, one in each lane, approached the crash site slowly with their flashing lights activated. Behind the semi-trucks, traffic was backed up "pretty far." *Id.* at 53. The semi-trucks created a temporary barrier across both lanes of the interstate. *Id.* at 54. At that point, perceiving that the danger to passing motorists continued while the disabled vehicle remained on the interstate, Jones and another stranger decided to move Ramirez's truck from the passing lane of the interstate. Tr. Vol. II p. 214 ("Uh, well after the—after the gentleman came and offered me his assistance, I decided that this was a reasonable time to—to try and move this vehicle out of the road *for the safety of others.*") (emphasis added). The passage of a short amount of time from the initial accident does not mean that the peril created by the accident dissipated or that the continuity between the commission of the wrong and the effort to avert its conse-

quences was broken.[7] We have previously examined whether a rescue doctrine instruction was proper in a situation where a third party witnesses a traffic accident and then attempted to direct traffic around the accident in order to prevent further accidents. *Star Transp., Inc.*, 891 N.E.2d at 1103–1105. We concluded:

> The underlying public policy behind the rescue doctrine is to encourage Good Samaritan efforts. Given that policy, we conclude it is logical to encourage persons who come upon a traffic accident to help avoid a secondary accident by voluntarily directing traffic around the first accident, without fear of being unable to recover any damages if injured while providing that assistance.... [The rescue doctrine] does not apply in situations where a person remote from the scene of an accident is notified of, or is called upon to respond to, an emergency situation. Here, however, [the plaintiff] was a first-hand witness of the danger Cottingham was creating by backing his semi onto 421 and completely blocking the southbound lane. Such activity created an immediately apparent danger to the safety of other motorists on 421 that [the plaintiff] and others attempted to alleviate by actual physical effort. There was a continuous, spontaneous link between Cottingham's original negligence and [the plaintiff's] gratuitous attempts to protect other motorists from that negligence. We conclude that the rescue doctrine properly applies to this particular set of facts.

*Id.* at 1104–05. Likewise, here, Jones witnessed Ramirez's disabled truck blocking a lane of Interstate 65. This created an immediately apparent danger to other motorists, and there is a continuous link between the original negligence and Jones's effort to physically remove the truck from the interstate. Further, the arrival and help of additional Good Samaritans did not eliminate the peril facing approaching motorists. Rather, their assistance provided an opportunity for Jones to act in a reasonable manner in order to protect other people from the imminent danger created by the presence of Ramirez's disabled truck in the passing lane of the interstate on a snowy evening. The trial court did not abuse its discretion in this regard by giving the instruction on the rescue doctrine.

### B. Instruction is a Correct Statement of the Law

Ramirez also argues that the rescue doctrine instruction improperly instructed the jury regarding the law. His first contention is that the language of the instruction improperly shifted the plaintiff's burden of proof: "The instruction misstated the law, asserting that the rescue doctrine could provide proof of reasonable conduct and foreseeable harm." Appellant Ramirez's Br. p. 8. Our reading of the instruction, however, reveals that the trial court did not shift Jones's burden of proof to Ramirez. We agree with Jones that the trial court's instruction to the jury that "*[i]f you* fin[d] that Aaron Jones attempted to move the disabled vehicle off the roadway in a reasonable attempt to prevent further harm, then you may find that his actions were both reasonable and foreseeable as to Ray Ramirez" left the question to the jury of whether Jones acted reasonably: "The instruction neither provided evidence nor purported to provide evidence of the reasonableness of [Jones]'s actions, but explicitly left that issue up to the jurors." Ap-

---

7. Testimony at trial established that approximately fifteen minutes elapsed between the initial accident and Jones's attempt to move the disabled vehicle from the interstate. Tr. Vol. III p. 21.

pellee's Br. p. 22. The instruction is a correct statement of law in this regard.

 Next, Ramirez argues that the instruction incorrectly informed the jury that he could be held liable for Jones's injuries if Jones acted to protect *property* from imminent peril. Appellant Ramirez's Br. p. 9. This instruction was incorrect, according to Ramirez, because the rescue doctrine only applies to situations in which a third party acts in a reasonable attempt to rescue *people* from imminent peril. Assuming, without deciding, that Ramirez is correct, the instructional error was nevertheless harmless. "Even when a jury is given an incorrect instruction on the law, we will not reverse the judgment unless the party seeking a new trial shows 'a reasonable probability that substantial rights of the complaining party have been adversely affected.'" *Penn Harris Madison Sch. Corp. v. Howard*, 861 N.E.2d 1190, 1195 (Ind.2007) (quoting *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001)). We look to whether the incorrect instruction likely affected the result of the proceeding. *Wallace v. Rosen*, 765 N.E.2d 192, 196 (Ind.Ct. App.2002). Here, the trial court instructed the jury that "[a] rescuer is one who undertakes physical activity in a reasonable attempt *to rescue persons* or property from imminent peril." Tr. Vol. IV p. 223 (emphasis added). As explained above, the jury was presented with ample evidence that Jones acted in an attempt to rescue human life—that is, the lives of approaching motorists. Tr. Vol. II p. 214 ("Uh, well after the—after the gentleman came and offered me his assistance, I decided that this was a reasonable time to—to try and move this vehicle out of the road *for the safety of others*.") (emphasis added); *see also* Tr. Vol. III p. 38–39 (Jones testifying about his intent when attempting to move the disabled truck). Given

this evidence, we cannot say that Ramirez's substantial rights were affected by the instruction.

## IV. Excessive Verdict

Finally, Ramirez contends that the verdict against him is excessive. He challenged the verdict as excessive in a motion to correct error filed with the trial court, which the trial court denied. Thus, he now appeals the trial court's denial of his motion to correct error.

Ramirez's sole contention in this regard is that, because he is not liable under the rescue doctrine for the injuries Jones sustained when Franciose hit him, the damages assessed against him should be limited to "compensation for the abrasion and bumps received in the first collision." Appellant Ramirez's Br. p. 13. However, as we have already determined, Ramirez *is* liable for Jones's foot injuries pursuant to the rescue doctrine. Thus, his argument fails.

Affirmed.

RILEY, J., and DARDEN, J., concur.