Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Mar 06 2013, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTIAN W. BARTHOLOMEW**
Efron, Efron & Yahne, P.C.
Hammond, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT MONTGOMERY**
Munster, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THE FIRST BAPTIST CHURCH OF HAMMOND, | ) ) ) | |
| Appellant-Defendant, | ) ) | |
| vs. | ) ) | No. 45A05-1207-CT-354 |
| FELIPE ANDRADE, a minor, by his mother and custodial parent, MANUELA ANDRADE | ) ) ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable William E. Davis, Judge
Cause No. 45D05-0910-CT-161

**March 6, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Felipe Andrade ("Andrade") was injured at an activity hosted by the First Baptist Church of Hammond ("the Church") and filed a complaint in Lake Superior Court. A jury trial was held, and the jury entered a verdict in favor of Andrade, but also determined that Andrade was 45% at fault for his injuries, and reduced his recovery accordingly. The Church appeals and argues that the trial court abused its discretion when it admitted testimony from Andrade's park and recreation safety expert over the Church's objection. Andrade cross-appeals and argues that the trial court erred when it denied his motion for judgment on the evidence on the issue of comparative fault.

We affirm.

**Facts and Procedural History**

The Church operates a ministry in Chicago and the surrounding area that provides bus service to and from the Church and its activities. Church volunteers generally visit homes on Saturdays to invite individuals to attend church services, Sunday school classes, or church outings. The Church then sends buses to the neighborhoods on Sundays to provide transportation for those activities.

On Saturday, November 17, 2007, a Church volunteer visited sixteen-year-old Andrade's home and spoke to his mother about a Frisbee toss activity planned for the next day. Felipe and his brother signed up for the activity, and the next day, they were transported via Church bus to Beaubien Woods, a forest preserve in Cook County, Illinois. Approximately 400 children of all ages were transported on ten buses accompanied by nearly 100 church volunteers.

2

Children were divided by age for the Frisbee toss activity, which consisted of church volunteers throwing numbered Frisbees to the children that they could later exchange for prizes. During the Frisbee toss, a group of teenagers were roughhousing, and were told to stop two or three times, but continued to do so.

Andrade did not participate in the Frisbee toss, but walked away from the activity toward a fence bordering the property and adjacent to the nearby expressway. Andrade stayed near the fence for twenty or thirty minutes before he was tackled from behind by more than one individual attending the Frisbee toss. Andrade could not identify the individuals that tackled him. Andrade's leg was injured, and he was transported to Saint Margaret Mercy Hospital in Hammond.

Andrade's femur was fractured and required surgery to repair the bone. An orthopedic surgeon placed a rod and screws in Andrade's leg in order to bridge the fracture. Andrade was hospitalized for nine days and spent much of that time with his leg in traction.

On October 28, 2009, Andrade, by his mother Manuela Andrade, filed a complaint in Lake Superior Court against the Church alleging negligent supervision. A three-day jury trial commenced on June 11, 2012. At trial, and over the Church's objection, Alan Caskey ("Caskey"), was permitted to testify as an expert witness. Caskey has a Ph.D. in recreation and parks management and is a safety consultant. He testified that the Frisbee toss was an unsafe activity that can cause participants to become more competitive and aggressive. Tr. pp. 250, 258. Also, during trial, Andrade moved for a judgment on the evidence on the issue of comparative fault, but that motion was denied. Tr. pp. 383-87.

The jury entered a verdict in favor of Andrade and awarded total damages of $225,000. However, the jury also concluded that Andrade was 45% at fault for his injuries, and therefore, the damage award was reduced to $123,750. The Church now appeals, and Andrade cross-appeals. Additional facts will be provided as necessary.

## I. Caskey's Expert Testimony

The Church argues that the trial court abused its discretion when it admitted Caskey's expert testimony. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Franciose v. Jones, 907 N.E.2d 139, 144 (Ind. Ct. App. 2009), trans. denied. This standard also applies to a trial court's decision to admit or exclude expert testimony. Id. We will reverse a trial court's decision to admit or exclude evidence only if that decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Id. A trial court's decision to admit or exclude evidence will not be reversed unless prejudicial error is clearly shown. Id.

The Church contends that Caskey's testimony "should have been excluded pursuant to Indiana Evidence Rule 702(a) because its subject matter fell distinctly within the knowledge of the average layperson and it could not prove helpful to the jury." Appellant's Br. at 13. The Church correctly observes that "[t]estimony that falls within the trier of fact's common sense should be excluded because it does not assist the trier of fact." See Whedon v. State, 900 N.E.2d 498, 506 (Ind. Ct. App. 2009), summarily affirmed by 905 N.E.2d 408 (Ind. 2009).

4

The trial court functions as the gatekeeper for expert opinion testimony. Norfolk S. Ry. Co. v. Estate of Wagers, 833 N.E.2d 93, 101 (Ind. Ct. App. 2005), trans. denied. Indiana Evidence Rule 702(a) provides:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

For a witness to testify as an expert, certain requirements must be met. Norfolk S., 833 N.E.2d at 101. "First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson; and second, the witness must be shown to have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact." Id. See also Newbill v. State, 884 N.E.2d 383, 398 (Ind. Ct. App. 2008) ("Whether the witness has 'specialized knowledge' that is 'beyond the knowledge generally held by lay' persons and will be helpful to the jury is a matter entrusted to the discretion of the trial court.") (citation omitted), trans. denied.

In this case, Caskey's testimony was based on his skill and/or experience rather than the application of scientific principles. Therefore, Andrade was required to demonstrate that "the subject matter is related to some field beyond the knowledge of lay persons and [Caskey] possesse[d] sufficient skill, knowledge or experience in the field to assist the trier of fact to understand the evidence or to determine a fact in issue." See F.A.C.E. Trading, Inc. v. Carter, 821 N.E.2d 38, 44 (Ind. Ct. App. 2005), trans. denied (citation omitted). "[T]he specific knowledge of an expert witness is neither determinative of the witness' qualification as an expert nor the admissibility of his

5

opinion into evidence." McIntosh v. Cummins, 759 N.E.2d 1180, 1185 (Ind. Ct. App. 2001), trans. denied. "A witness' competency is determined by his knowledge of the subject matter generally, and his knowledge of the specific subject of inquiry goes to the weight to be accorded his opinion, not its admissibility." Id.

The Church does not dispute Caskey's qualifications in the areas of parks and recreation management and safety. Caskey has a bachelor's degree, master's degree, and Ph.D. in recreation and park administration. He has authored several publications on the subject of recreation and park administration, and is a safety consultant. Caskey has served on multiple committees charged with finding ways to reduce injuries to persons participating in various recreational activities and sports. Caskey testified that there is no one safety standard in his field, but

> there are safety standards and equipment standards for various parks and recreation activities and youth sports. There are national standards through various national organizations, such as Boy Scouts, YMCAs, baseball organizations. And there are recognized standards of care in the provision of parks and recreation programs for child or for adults.

Tr. pp. 237-38. Caskey also listed several reference materials that he had reviewed that discuss "the standard of care for conducting a day camp type activity." Tr. pp. 255-56.

Caskey testified that the Church's activity, i.e. the Frisbee toss, with approximately 400 children present, was an unreasonably dangerous activity. Tr. p. 258. Caskey stated that the activity would have made the children more aggressive and competitive. Id. He also testified that the Church should have had more than one activity planned because of the number of children in attendance, and the Frisbee toss, which he characterized as a free-for-all type of activity, was not appropriate. Caskey reviewed the

6

Church's policies and handbook and stated that the Church volunteers facilitating the event violated those policies. Tr. p. 271. He observed that the Church's manual did not contain "any safety guidelines to [sic] how to conduct a recreation program for their volunteers or for their workers." Id. In addition, Caskey stated that given the size of the area where the activity took place, the Church volunteers should have, but failed to, set up perimeter supervision. Tr. pp. 300-02.

Caskey's testimony was helpful to the jurors' ultimate determination of whether the Church negligently supervised the minors it gathered for the Church's outing. Planning an appropriate activity for a group of approximately 400 children of all ages and the accompanying safety concerns is not within the knowledge of the average layperson. Moreover, Caskey's testimony aided the jurors' evaluation of the Church's policies and procedures for organizing and managing the event, and the Church's employees and volunteers implementation of those policies. For these reasons, we conclude that the trial court acted within its discretion when it admitted Caskey's expert testimony over the Church's objection.

## II. Motion for Judgment on the Evidence

In his cross-appeal, Andrade argues that the trial court erred when it denied his motion for judgment on the evidence. The standard of review on a challenge to a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision. State Farm Mut. Auto. Ins. Co. v. Noble, 854 N.E.2d 925, 931 (Ind. Ct. App. 2006), trans. denied. Judgment on the evidence is proper where all or some of the issues in a case tried before a jury are not supported by sufficient evidence. Id. A

party may move for such judgment on the evidence after the plaintiff's case in chief or after all the evidence in the case has been presented and before judgment. Ind. Trial Rule 50(A). We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the non-movant, and the motion should be granted only where there is no substantial evidence to support an essential issue in the case. Noble, 854 N.E.2d at 931. If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. Id.; see also T.R. 50(A).

Andrade argues that there was "no evidence of any comparative fault" on his part because "[t]here was no testimony that he antagonized his perpetrators or in any way contributed to cause his own injuries[.]" Cross-Appellant's Br. at 8-9. Before we address Andrade's argument, we observe that "fault", "for purposes of [the Indiana Comparative Fault Act], includes any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages." Green v. Ford Motor Co., 942 N.E.2d 791, 794 (Ind. 2011) (citing Ind. Code § 34-6-2-45). Moreover, the allocation of fault remains an issue of fact for the jury to decide. Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1056 (Ind. 2003). Finally, "[c]hildren over the age of 14, absent special circumstances, are chargeable with exercising the standard of care of an adult." Penn Harris Madison Sch. Corp., v. Howard, 861 N.E.2d 1190, 1194 (Ind. 2007).

8

In this case, the Church admitted its duty to provide safety and security to the children attending the Church outing. Therefore, the question before the jury was whether the Church breached that duty and whether that breach proximately caused Andrade's injury. See Kroger Co., v. Plonski, 930 N.E.2d 1, 6 (Ind. 2010). Further, the church alleged that Andrade "unreasonably failed to avoid injury or to mitigate damages." See Appellant's App. p. 18.

The jury was presented with evidence that Andrade isolated himself from the other participants and church volunteers. Andrade left the area where the Frisbee toss was occurring and proceeded over to a fence bordering the area adjacent to the expressway, without any other person present, where he remained for several minutes before he was injured. Even Andrade's expert, Caskey, testified that Andrade should not have been in that area. Tr. p. 300.

From this evidence, a reasonable inference can be made that Andrade bore some responsibility for his injuries, and it was the jury's task to determine to what degree Andrade's decision to isolate himself from the participants and Church volunteers was at fault for the injury he sustained. For this reason, we conclude that the trial court properly denied Andrade's motion for judgment on the evidence.

**Conclusion**

The trial court did not abuse its discretion when it allowed Andrade to present Caskey's expert testimony to the jury, and also did not err when it denied his motion for judgment on the evidence.

9

Affirmed.

KIRSCH, J., and CRONE, J., concur.